(77 N. W. Rep. 1016.)

---

THE UNITED STATES SAVINGS AND LOAN COMPANY *vs.* SANFORD A. SHAIN, *et al.*

Opinion filed November 14, 1898.

### Conflict of Laws—Contract as to Which Law Shall Control.

Where in a money-loaning transaction, the lender and the borrower reside in different states, it is competent for them to agree that the transaction shall be governed by the laws of either state.

### Presumption of Validity.

Where, under such conditions, the transaction would be valid and binding under the laws of one state, and invalid under the laws of the other, the law will presume, in the absence of stipulations, that the parties contracted with reference to the laws of that state where their contract will be upheld.

### Foreign Corporation May Enforce Contract in this State.

Where a foreign building and loan association advanced money to a member of said association resident in this state, who received the same, and executed a note for the amount, and a mortgage upon real estate to secure the same, such note and mortgage can be enforced in the courts of this state, notwithstanding the fact that said association had not complied with the statutes prescribing the terms upon which foreign corporations might do business in this jurisdiction. Mill Co. v. Bartlett, 54 N. W. Rep. 544, 3 N. D. 138, followed.

### Stock Payments Not Applied to Wiping Out Debt for Money Borrowed.

Where a party subscribes for shares of stock in a building and loan association, and agrees to pay therefor by paying certain monthly installments upon each share of stock until the same reaches maturity or par, and where such party subsequently borrows money from such association, with the understanding that the same may be paid by a surrender and cancellation of his stock when it reaches

maturity, while the stock of such party shares in the profits of the association he cannot claim to have his monthly payments upon stock applied, as made, in reduction of the amount so borrowed.

### Violation of Charter by Association Will Not be Presumed.

Courts cannot presume that a building and loan association violated its charter provisions, as well as the provisions of the statute under which it was created, by refusing to allow its members to secure its funds by competitive bidding for the same, without some competent evidence of such a course.

### Usury—Premium Bid—Estoppel.

While a by-law of a building and loan association, which fixes a minimum premium below which bids will not be considered, may render a transaction usurious as to one who was forced, by reason of the by-law, to bid a larger premium than he otherwise would have been required to pay, yet, where one voluntarily bids a premium greatly in excess of that required by the by-law, he cannot be heard to complain of the obnoxious by-law.

Appeal from District Court, Stutsman County; *Fisk,* J.

Action by the United States Savings and Loan Company against Sanford A. Shain and others. Judgment for defendants. Plaintiff appeals.

Reversed.

*Benton & Bradley,* for appellant.

The right of a corporation of another state to make contracts in this state is unquestionable, where not contrary to the known policy of the state or injurious to its interests. *Bank* v. *Earl,* 13 Pet. 519-588. Minnesota corporations are permitted to establish offices without the limits of that state for the transaction of building and loan business. Sec. 116, Ch. 34, Minn. Stats. 1878. And there is nothing in the laws of this state, indicating a policy refusing to recognize the right of such foreign corporations to make contracts here, excepting the limitation imposed. Sections 3190-3192 Comp. Laws; Ch. 40 and 41 Laws 1889. The prohibition of certain specified contracts by corporations in these laws is by necessary implication an admission that other contracts may be made by foreign corporations and that no legislative permission is necessary to give them validity. *Bank* v. *Earl,* 13 Pet. 519; *Conn. Mut. Life Ins. Co.* v. *Cross,* 18 Wis. 109; *New York, etc., Co.* v. *Oil Co.,* 3 Duer. 648; *Munford* v. *Ins. Co.,* 4 N. Y. 463; *Brill* v. *Pool,* 12 N. Y. 495; *Blair* v. *Ins. Co.,* 47 Am. Dec. 129. Neither its charter nor the laws of the state creating it, places any restraint upon the association as to making contracts in a foreign state. The right to so contract is presumed. Thomp. on Corp. § 7883; *Wood Hydraulic Co.* v. *King,* 45 Ga. 34; *Boulware* v. *Davis,* 90 Ala. 207; *Chautauqua County Bank* v. *Risley,* 19 N. Y. 381. And the right to so contract here is presumed unless repugnant to the policy of our laws. Thomp. on Corp. § 7884; *Aldward* v. *Holmes,* 10 Abb. N. C. 96; *Ducat* v. *Chicago,* 95 Am. Dec. 529. The con-

tract of plaintiff is valid and enforcible notwithstanding its failure to comply with the provisions of § 2, Ch. 41, Laws 1889. *Washburn Mill Co.* v. *Bartlett,* 3 N. D. 138. A court of equity will not cancel the notes and mortgage given a building and loan association, because the association did not comply with the statute prescribing terms upon which foreign corporations may do business within the state, unless the mortgagor seeking the relief pays back the amount he has actually received. *New York National B. & L. Ass'n* v. *Cannon,* 41 S. W. Rep. 1054; Story Eq. Jur. § 301; *Sporrer* v. *Eifler,* 1 Heisk. 636; *Bank* v. *Windmill Co.,* 34 S..W. Rep. 516, S. C. 96 Tenn. 367. It was competent for the parties to stipulate in their contract, that it was made with reference to and under the laws of the State of Minnesota. *Equitable B. & L. Ass'n* v. *Hoffman,* 27 S. E. Rep. 692; *Turner* v. *Ass'n,* 27 S. E. Rep. 947; *Caesar* v. *Cappell,* 83 Fed. Rep. 403.

*Ormsby McHarg,* for respondent. .

A foreign building and loan association cannot do business in this state, whereby it contracts to receive usurious interest, and claim protection under the laws of this state. *Falls* v. *U. S. Sav. & L. Co.,* 13 So. Rep. 25; *Link* v. *Ass'n,* 89 Pa. 15; *Willard* v. *Ass'n,* 45 Md. 546; *Kuppert* v. *Ass'n,* 30 Pa. 465; *Maine Guaranty Co.* v. *Cox,* 42 N. E. Rep. 915; *Meroney* v. *Atlanta,* 21 S. E. Rep. 924; *Randall* v. *Ass'n,* 60 N. W. Rep. 1019; *St. Joseph* v. *Thompson,* 19 Kan. 321; Endlich B'l'd'g Ass'ns, § § 510 and 518. Plaintiff contracted to receive and did receive interest in excess of twelve per cent. This was a criminal offense. Ch. 133 Laws 1889. Thus the contract sought to be enforced here was in effect doing business in this state in violation of an express prohibition. *Bradley* v. *Armstrong,* 9 S. D. 267, 68 N. W. Rep. 733. Only building associations, incorporated under the laws of this state are exempt from the operation of the usury law. § 3 Ch. 41 Laws 1889; *Vermont L. & T. Co.* v. *Whithed,* 2 N. D. 82. The contract is governed by the law of the state wherein the land is situated. *United States Sav. & L. Co.* v. *Scott,* 34 S. W. Rep. 235; *Falls* v. *Loan Co.,* 13 So. Rep.. 25; *Meroney* v. *Atlanta,* 21 S. E. Rep. 924; *Tilley* v. *Ass'n,* 52 Fed. Rep. 621; *Rowland* v. *Ass'n,* 18 S. E. Rep. 965; *Roberts* v. *Life Ins. Co.,* 24 S. E. Rep. 780; *Building & Loan Ass'n* v. *Griffin,* 39 S. W. Rep. 656. If the contract is controlled by the Minnesota statute, as contended by appellant, it is void for usury. The transaction with respondent was a loan and not exempt under the statutes of Minnesota from operation of the usury law there. *Fagin* v. *Peoples Sav. & L. Ass'n,* 55 Minn. 437 S.. C. 57, N. W. Rep. 142; *Central B'l'dg Ass'n* v. *Lampson,* 60 Minn. 422, S. C. 62 N. W. Rep. 544. And this because appellant is not a mutual building and loan association. *Central B'l'd'g Ass'n* v. *Lampson,* 60 Minn. 422; *Kent* v. *Mining Co.,* 78 N. Y. 159; *Simpson* v. *Ass'n,* 41 S. W. Rep. 570; *King* v. *Association,* 48 N. E. Rep. 677; *Gibson* v. *Association,* 48 N. E. Rep. 570. The

association charged a fixed premium of 50 per cent. for an advancement or loan. The effect of this was to destroy competition, and rendered the transaction usurious. *McCauley* v. *Association,* 37 S. W. Rep. 212; Stiles Appeal, 95 Pa. St. 123; *State* v. *Greenville,* 29 Ohio St. 92; *State* v. *Association,* 35 Ohio St. 258; *Bates* v. *Ass'n,* 42 Ohio St. 655, Endlich 394, 395, 306 and 307.

BARTHOLOMEW, C. J. This is an action by the original mortgagee to foreclose a mortgage on certain real estate situate in Stutsman county. The defendants Sanford A. Shain and Julia Shain, his wife, were the original mortgagors; The defendant William Stone is the subsequent grantee of Sanford A. Shain, and took subject to the mortgage; Augusta Stone is the wife of William Stone; and S. L. Glaspell was joined as defendant as a junior lienholder. Sanford A. Shain and William Stone answer jointly, the other defendants not appearing.

The complaint alleges the incorporation of the plaintiff under the laws of the State of Minnesota, for the purpose of doing business as a building and loan association, under the name of the United States Savings, Loan & Building Company, and the subsequent change of name to the United States Savings & Loan Company. It alleges that plaintiff has fully complied with all the requirements of the laws of the Territory of Dakota and the State of North Dakota for the purpose of enabling it to do business in this jurisdiction; that on February 4, 1889, the defendant Sanford A. Shain applied to plaintiff for a loan of $1,500, agreeing to take 30 shares of stock in the plaintiff company, and continue the monthly payments thereon until said stock should mature or the loan be paid, and pay all fines and assessments against said stock, and to pay plaintiff a premium of 50 per cent. of said 30 shares, and to assign 15 shares to plaintiff as collateral to said loan; that this offer was accepted, and said Shain executed and delivered to plaintiff the following written instrument: "St. Paul, Minnesota, April 8th, 1889. For value received, after three years from date, and before nine years from date, I promise to pay to the order of the United States Savings, Loan and Building Company, at the office of its treasurer, St. Paul, or its trustee, in Minneapolis, Minn., the sum of fifteen hundred dollars, with interest at the rate of six per cent. per annum on the sum of fifteen hundred dollars, payable monthly. It is understood that this note is given for a loan obtained on thirty shares of the stock, of the said United States Savings, Loan and Building Company; and, if the maker hereof fails to make any monthly payment on said stock or to pay any installment of interest for period of six months after the same is due, then the whole amount of these notes shall at once become due and payable, but if the maker hereof shall pay all installments of interest which become due hereon, and all monthly payments and fines which become due on said stock, until said monthly payments shall have been past due for a period of six months, then, upon the surrender of said stock

to said company, this note shall be deemed to be fully paid and
canceled. This note is understood to be made with reference to and
under the laws of the State of Minnesota. If this note is paid
before seven years from date, there shall be allowed such rebate
from the premium as the board of directors of said company shall
deem equitable. Premium, $1,500. Loan, $1,500." It is further
alleged that, to secure compliance with said instrument in all par-
ticulars, Sanford A. Shain and wife executed and delivered to
plaintiff the mortgage in question. There is a provision in the
mortgage that, in case of failure to pay the monthly interest pay-
ment or the monthly payment on stock, and such default shall con-
tinue for three months, then the whole amount to become at once
due and payable. These defaults are set forth, and the defendants
are charged with the following amounts:

| | | |
|---|---:|---:|
| Principal of loan | $1,500 | 00 |
| Monthly interest in arrears | 97 | 50 |
| Monthly stock installments in arrears | 216 | 00 |
| Fines | 48 | 00 |
| Making a total of | $1,861 | 50 |

Defendants are then credited with what is called the "withdrawal
value" of his shares of stock, amounting to $1,018.35, leaving a
balance of $843.15, for which plaintiff asks judgment and decree
of foreclosure.

The answer admits plaintiff's corporate organization, but denies
that it was ever organized as a building and loan association, and
alleges that it was organized for the purpose of loaning money at
a usurious rate of interest; denies that plaintiff was ever author-
ized to do business in the Territory of Dakota. It also puts in issue
the application for loan, but admits the execution of the mortgage,
pleads that the contract was usurious, and pleads payment in full.

The trial resulted in a decree for defendants, directing the can-
cellation and satisfaction of the note and mortgage in question, and
the case comes to this Court for retrial.

The appellant contends that the transaction in question must be
governed by, and decided under, the laws of Minnesota. Respond-
ents insist that the laws of Dakota territory and North Dakota must
control. The solution of this question, under the authorities, is
perfectly clear. This was, in its essence, a money-loaning transac-
tion. By it Sanford A. Shain borrowed $1,500 from appellant.
The parties were residents of different states. It was entirely com-
petent for them to contract under the laws of either. They ex-
pressly agreed, both in the note and mortgage, that they contracted
under the laws of Minnesota, the state of which appellant was a
resident. That agreement is binding. *Liverpool & G. W. Steam
Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 9 Sup. Ct. 469; *Security
Co.* v. *McLaughlin,* 87 Ga. 1, 13 S. E. Rep. 81; *Dugen* v. *Lewis,*
79 Tex. 246, 14 S. W. Rep. 1024; *Lanier* v. *Trust Co.* (Ark.) 40

S. W. Rep. 466; *Caesar* v. *Cappell,* 83 Fed. 403; *Scudder* v. *Bank,* 91 U. S. 406; *Bigelow* v. *Burnham,* 83 Iowa, 120, 49 N. W. Rep. 104; *Smith* v. *Parsons* (Minn.) 57 N. W. Rep. 311; *Andrews* v. *Pond,* 13 Pet. 77; *Watson* v. *Lane,* 52 N. J. Law, 550, 20 Atl. 894. The fact that the loan is made on real estate does not change this rule. *Trust Co.* v. *Burton,* 74 Wis. 329, 43 N. W. Rep. 141; *Bennett* v. *Association,* 177 Pa. St. 233, 35 Atl. 684; *Association* v. *Vance* (S. C.) 27 S. E. Rep. 274; *Association* v. *Hoffman,* Id 692. The note and mortgage in this case were made payable in Minnesota. Many cases hold that such fact alone would make the contract a Minnesota contract, in the absence of contrary stipulations. As early as *Newman* v. *Kershaw,* 10 Wis. 333, it was said: "The general rule that contracts are to be governed by the law of the place of performance is too well settled to require the citation of authorities."

Again, it is conceded that, if appellant be in fact a building and loan association, this contract would not be usurious under the laws of this jurisdiction. Not that our laws as to building associations differed materially from those of Minnesota, but our laws applied only to domestic corporations, and hence appellant could not claim any protection from them, and this contract, if a Dakota contract, would, it is claimed, be usurious. Conceding this to be true, and even were the contract silent as to which forum should govern, yet, the parties being residents of different states, the law would presume that they contracted with reference to the laws of that state where the contract would be valid and enforceable. Whart. Confl. Laws, § 429; *Bigelow* v. *Burnham,* 90 Iowa, 300, 57 N. W. Rep. 865; *Bell* v. *Packard,* 69 Me. 105; *Pritchard* v. *Norton,* 106 U. S. 124, 1 Sup. Ct. 102. Under any view that presents itself, this contract must be construed according to the laws of Minnesota.

It is next urged that the note and mortgage are of no force, or validity, for the reason that, at the time of making the contracts in suit, appellant was not authorized to do business in the then Territory of Dakota. It may be conceded that at that time appellant had not complied with the provisions of sections 3190, 3192, Comp. Laws, specifying what it was necessary to do in order to enable a foreign corporation to do business in the Territory of Dakota. But, upon full consideration, we held in *Mill Co.* v. *Bartlett,* 3 N. D. 138, 54 N. W. Rep. 544, that such facts did not render contracts actually made by and with such foreign corporations unenforceable and void as between the parties. It is true that, while the negotiations that finally terminated in the contract sued upon were pending, chapter 41, Laws 1889, went into effect. That chapter imposes certain further duties upon foreign building and loan associations, but the inhibition upon doing business without compliance with the law is in no manner stronger than, or different from, that contained in the cited sections of the Compiled Laws. Hence the decision in *Mill Co.* v. *Bartlett* must control this point. But is this question before us? We have held that the contract was

made under the laws of Minnesota. The note was dated in Minnesota, the note and mortgage were finally delivered and accepted in Minnesota, and the draft for the money was payable in Minnesota. Did that constitute "doing business" in the Territory of Dakota? We need not answer the question, but the well-considered case of *Caesar* v. *Capell*, 83 Fed. Rep. 403, is very instructive on this point.

We come now to a closer inspection of the contract. Sanford A. Shain had already subscribed for 30 shares of stock of the appellant corporation. The matured value of this stock would be $3,000. Its value at the time was but small. But, in consideration of receiving an advance of $1,500, Shain agreed to continue the payment of the monthly installment of 60 cents upon each share of said 30 shares of stock until the same should mature, or, in other words, reach par value. One-half of said stock (15 shares) was to be assigned absolutely to appellant as a bonus or premium for such advance. The remaining 15 shares were to be assigned as collateral to said loan or advance. When the stock matured the advance would be repaid by the absolute surrender to appellant of the shares so assigned as collateral. But as Shain might cease his installment payments on stock at any time, and thus leave appellant without any adequate security, if it depended upon the stock alone, it required Shain, in addition to the assignment of the stock, to execute the note,—or the contract which we denominate the note,—and the mortgage securing the same; Shain agreeing to pay interest upon the sum advanced at the rate of 6 per cent. per annum, payable monthly in advance, until such loan was repaid. Now, we need enter into no mathematical calculations to demonstrate what rate of interest Shain in fact paid or agreed to pay. Section 109, c. 34 Gen. St. Minn. 1878, and which was in force when this contract was made, declares that: "Such association or corporation is authorized to loan money and funds, and secure such loan by mortgage, or other security; and any premium taken by such association for the preference or priority of such loans, or for the preference or priority on any sale, or disposition of its lands," etc., "or any premium for preference or priority taken by any mutual building association, shall not be deemed interest within the meaning of any law of this state, nor shall any excess of such premium over any rate of interest permitted by the laws of this state be deemed or held, in any court of law or equity, to be usury." That statute eliminates the premium from our further consideration as an element of usury. We may remark, in passing, that the statutes of Dakota territory contained a similar provision, fully as strong, but limited to domestic corporations. See Comp. Laws, § 3171. It is urged by counsel, and has sometimes been held, that every payment on account of stock must be treated as a payment, pro tanto, of the money loaned, and the principal must be reduced by the amount of such payment, and the principal would thus grow less from month to month, until towards the end it would be reduced to a very small sum, and finally

to one month's payment; and, as the monthly interest payments remain the same (*i. e.* at the rate of 6 per cent. per annum upon the full sum of $1,500), it is claimed that the rate of interest becomes enormously usurious, amounting towards the close of the term to several hundred per cent., and it is claimed that this makes the contract not only usurious, but so harsh, exacting, and unjust that a court of equity should relieve from it. In our judgment, this view entirely excludes the fact that all money that is paid into the treasury of the corporation upon stock installments is, in theory, at least, and generally in practice, immediately advanced to other borrowing stock subscribers, at the same rate of interest, and at a large premium, thus tending at once to increase the value of the stock of the member who pays the money into the treasury, and hasten the date of its maturity, or, in other words, hasten the day when payments on account of stock subscriptions can cease. In this manner every member receives a profit upon the money he pays upon stock installments. Now, a man cannot use his money to pay his debts, and yet use it to bring a profit to himself. The two things embody a contradiction. The stockholder in a building and loan association who insists upon having his stock installment payments applied at once in reduction of the amount advanced to him must, in fairness renounce all claims to share in the profits of the association. But that is contrary to the whole theory and spirit of building and loan associations, and directly opposed to the intentions of all parties who become members. And these remarks suggest another thought, that answers respondents' contention that the payment of the large premium renders the contract harsh and oppressive. If any subscriber suffers unduly in consequence of the premium he pays, it is because his necessities are such that he is willing to pay a larger premium than other subscribers pay. If all subscribers pay the same premium, and all the money paid in be kept continually loaned, then there can be no hardship, however great the premium may be; and herein we find the causes that operated upon the legislative mind, and induced it to declare that no amount of premium paid should render the contract usurious. End. Bldg. Ass'ns, § 17, declares: "The principal aim is to provide for its members, desirous of owning homesteads, the opportunity of obtaining advancements, with facilities for gradual liquidation, not elsewhere to be obtained, which together with the mutuality of the whole plan, amply compensates for the apparent exorbitancy of the premiums and interest; keeping in constant view the interests of the investor as well as the borrower."

But it is strenuously insisted that appellant is not a building and loan association, within the provisions of the Minnesota statutes, and hence not entitled to the privileges and immunities extended to such corporations. Two cases from Minnesota are cited in this connection. The first is *Fagan* v. *Association* (Minn.) 57 N. W. Rep 142. The opinion in that case contains an intimation that the articles of association and by-laws of the association there involved rendered it simply a saving and loan association, rather than a build-

ing and loan association. What those articles and by-laws were, is not disclosed; hence we cannot say that what is there said would have any application whatever to this appellant. The point decided by that case in no manner involves the point we are now discussing. The second case is that of *Association* v. *Lampson*. (Minn.) 62 N. W. Rep. 544. In that case it is said: "The respondent, then, upon this appeal, is to be regarded as a mutual building and loan association, doing a local business; and as such it is not subject to the usury laws of this state by reason of excess of premiums contracted to be paid by its members to it, on a loan to them, over the rate of interest permitted by law." It is claimed that under that decision it is only such building and loan asociations organized under the laws of Minnesota as are engaged in "doing a local business" that are entitled to exemption from the usury laws. The Court was then dealing with an association that did only a local business, and it made its decision no broader than the case before it. No question of discrimination between building and loan associations doing business within the state only, or doing business within and without the state, was before the Court. The association there involved, and the appellant here, were organized under the same statute (section 109, c. 34, Gen. St. 1878), and section 116 of said statute clearly contemplates that such associations need not limit their business to the State of Minnesota; and we do not think the Supreme Court of that state intended to deprive an association so organized of the benefit of the usury exemption because it had advanced money to a member who resided out of the state, or to declare that such fact deprived such association of its character of a building and loan association. It appears that, some three or four years subsequent to the making of this advancement or loan, some changes were made in the articles of incorporation and in the by-laws of appellant, and something is said in argument as to the effect of these changes upon the character of appellant. But these changes in the by-laws do not appear in the abstract, and perhaps it is unnecessary. We have carefully scrutinized the articles of incorporation and by-laws as they existed when this contract was made, and also the articles of incorporation as amended. In these we find nothing to warrant the assertion that appellant is not in fact a building and loan association. It is stated that the changes in the by-laws (which do not appear in the abstract) make certain classifications in the stock which impair the feature of mutuality. Be this as it may, it is conceded that such changes in the by-laws could not change the fundamental rights of the parties under a pre-existing contract, and in this case we are simply dealing with the enforcement of such a contract.

Lastly, it is urged that when Shain made his loan the money was not put up, subject to competitive bids. The evidence does not support this assertion. We have only the fact that the offer, as made by Shain, was for a premium of 50 per cent. How many other bids there may have been for the same money does not appear. True,

it is shown that appellant made two other loans in this state, and received the same bonus or premium. But that does not prove that there was no competitive bidding. Both the statute and the by-laws of the appellant required the funds to be put up, subject to competitive bids. We cannot assume that this was not done, in the absence of all evidence on the point. It is true that one of appellant's by-laws in force when the loan was made fixed the minimum premium at 35 per cent. But it is evident that Shain was not injuriously affected by such by-law as his bid was far above the minimum thus fixed. There was nothing but his desire to secure the money that required him to make the bid he did make. He was bound to know that upon a much lower bid he could obtain the money, if no one bid higher than he did. He cannot be heard to complain of the obnoxious by-law. End. Bldg. Ass'ns, § 411, and cases cited.

It follows from what we have said that no valid defense to this action has been shown, and that apellant is entitled to a foreclosure of its said mortgage. It is the judgment of this Court that the District Court of Stutsman county set aside and vacate its judgment heretofore entered in this case, and enter judgment and decree of foreclosure in favor of appellant, as prayed in the complaint, save and except the item of $216 claimed for stock installments in arrears. Such item is not included in the note, or secured by the mortgage. *Fagan* v. *Association* (Minn.) 57 N. W. Rep. 142. Reversed. All concur.