(83 N. W. Rep. 1.)

---

M. C. CLARKE AS RECEIVER *vs.* MATHIAS OLSON, *et al.*

Opinion filed August 15, 1900.

**Building and Loan Association—Discount of Shares.**

A stockholder in a building and loan association, owning 16 shares of stock, received from the association the sum of $800 in cash, and executed to the association his bond for $1,600, being the amount received and the premium bid therefor, due in nine years from date, with interst upon $800 at 6 per cent. per annum. The condition recited that the money was advanced by way of anticipation of the value of the stock at maturity; that the bond might be satisfied by paying the face thereof, or by maturing the said 16 shares of stock and surrendering the stock. The obligor bound himself to pay $9.60 per month as dues on said stock until the same reached maturity or par, but the bond provided that in case of default the obligee might declare the whole bond due, and sue thereon and recover the sum of $1,036.80, as liquidated damages for the breach of said bond, less the amounts that had been paid as monthly dues on stock. The amount stipulated as damages covered the monthly dues for a period of nine years. The bond was secured by mortgage. In an action brought by a receiver of the association to foreclose, *held*, that the transaction was a discount of the shares, and not a loan of money, and that the mortgage secured the payment of the monthly dues for the period of nine years, and that all monthly dues paid must be deducted from the amount stipulated, and judgment rendered for the remainder.

**Rights of Parties—Action by Receiver.**

Where the full sum so secured had been paid as and for monthly dues upon said stock before the receiver was appointed, said receiver can recover nothing upon the bond and mortgage. But, if the stock of the defendant had not in fact been matured by such payments, defendant's liability upon his original stock-subscription contract remained in full force, and the receiver has the same rights thereunder as against the defendant that he has to collect the unpaid stock subscription of any non-borrowing stockholder, and the principle of mutuality is not affected by the bond and mortgage.

**Deposit of Securities as Condition to Doing Business.**

> Where a building and loan association desires to do business in a state other than that in which it is chartered, and is authorized by its charter so to do, and in order to do so deposits, in compliance with the laws of such other state, its securities, in a specified amount, with the treasurer of such state, to be held in trust for the benefit of the shareholders and creditors in such state, and receives its license from such state to transact business therein, and so transacts business for a number of years, such association cannot, upon subsequent insolvency, nor can a shareholder not resident of such other state, plead that the act of the association in making such deposit of securities was ultra vires.

Appeal from District Court, Barnes County; *Glaspell, J.*

Action by M. C. Clarke, as receiver of the American Savings & Loan Association, against Mathias Olson and others. Judgment for plaintiff, and defendants appeal.

Modified.

*Morrill & Engerud,* for appellant, cited *Lewis* v. *Association,* 73 N. W. Rep. 793; *Wilcox* v. *Smith,* 78 N. W. Rep. 217; *Hale* v. *Cairns,* 77 N. W. Rep. 1010, 8 N. D. 145.

*Cochrane & Corliss,* for respondent.

Payments made upon stock that was pledged as collateral security for the payment of the loan does not constitute payment upon the loan. The purchasing of the stock and the borrowing of the money were distinct and separate transactions. *Hale* v. *Cairns,* 8 N. D. 145; *Endlich Building Ass'n.,* Secs. 447, 448, 452, 478; *Pioneer S. & L. Co.* v. *Cannon,* 36 S. W. Rep. 386; *Sappington* v. *Aetna Loan Co.,* 76 Mo. App. 242; *Southern B. & L. Ass'n.* v. *Anniston,* 15 South. Rep. 173; *Loan Ass'n.* v. *Hornbacker,* 42 N. J. L. 635; *Post* v. *Mechanics' B. & L. Ass'n.,* 37 S. W. Rep. 216, 4 Am. & Eng. Enc. L. (2d Ed.) 1057, 1058; *Haynes* v. *Southern B. & L. Association,* 26 South. Rep. 527. That there two relations are entirely distinct and that the stockholder, who is a borrower, has no right to offset stock payments against his debt when the association is insolvent, is held not only in the Cairns and Shain cases, but in many others. *Hale* v. *Cairns,* 8 N. D. 145; *United States S. & L.* v. *Shain,* 8 N. D. 136; *Wolford* v. *Citizens' B. & L. Ass'n.,* 40 N. E. Rep. 694; *Eversmann* v. *Schmidt,* 41 N. E. Rep. 139; *Curtiss* v. *Granite State Prov. Ass'n.,* 36 Atl. Rep. 1023; *Goodrich* v. *Ass'n.,* 54 Ga. 98; *Strohen* v. *Franklin,* 8 Atl. Rep. 843; *Rogers* v. *Hargo,* 20 S. W. Rep. 430; *Sullivan* v. *Stucky,* 86 Fed. Rep. 491; *Brown* v. *Archer,* 62 Mo. App. 277; *Weir* v. *Granite State Prov. Ass'n.,* 38 Atl. Rep. 643; *American* v. *Gray,* 38 Atl. Rep. 668; *Price* v. *Kendall,* 36 S. W. Rep. 810; *Post* v. *Mechanics' B. & L. Ass'n.,* 69 N. W. Rep. 889; *Rogers* v. *Raines,* 38 S. W. Rep. 483; *Williams* v. *Maxwell,* 31 S. E. Rep. 820; *Thompson* v. *Ass'n.,* 27 S. E. Rep. 118; *Leahy* v. *Nat. B. & L. Ass'n.,* 76 N. W. Rep. 425; *Leary* v. *Ass'n.,* 49 S. W. Rep. 632. Inasmuch as the directors and officers of the association are chosen

by the stockholders and are their agents, the stockholders are all equally responsible for the insolvency of the association and can base no claim to favorable consideration on that account. *Sullivan* v. *Spanial*, 78 Ill. App. 125. Chapter 33, Laws 1899, is unconstitutional. *Maynard* v. *Granite State Ass'n.*, 92 Fed. Rep. 435; *Blake* v. *McLung*, 19 Sup. Ct. Rep. 165. A stockholder who has given notice of withdrawal cannot after the insolvency of the association receive any more than his just share. *Ricken* v. *Suddard*, 80 Ill. App. 204. The title to the bond and mortgage have vested in the plaintiff by a written assignment in due form, and whether he can maintain this action in his individual or his representative capacity is a matter that does not in the least concern the defendants who have no other interest in the question than that they may be protected as against a second payment of the debt to others. *Seybold* v. *Bank*, 5 N. D. 460-467. The directors in deciding to embark in business in Wisconsin, and in accepting the conditions of the Wisconsin statutes on which conditions alone such association could do business therein, fully represented all the shareholders of the association, and they are as much bound by the acts of the board of directors, their agents, as though they themselves had participated therein. *Lewis* v. *Amer. S. & L. Ass'n.*, 73 N. W. Rep. 793; *Burrows* v. *Bashford*, 22 Wis. 104.

BARTHOLOMEW, C. J. This action involves a foreclosure of a mortgage given to a building and loan association. It is the same association that was before us in the case of *Hale* v. *Cairns*, 8 N. D. 145, 77 N. W. Rep. 1010. The association is insolvent. Hale was the receiver appointed in Minnesota, which was the home of the corporation. The plaintiff in this case, Clarke, is the receiver appointed in Wisconsin; and he seeks to recover in this case upon an asset that was deposited by the association with the proper officers in Wisconsin under the laws of that state, which required a deposit as a condition upon which the corporation would be premitted to do business in that state. An interesting question is raised as to the power of the corporation, under its organic act, to thus deposit the assets, but we need not discuss the question at this time. Plaintiff seeks to recover in this action the amount borrowed by or advanced to the defendant, with certain interest thereon. The defendant insists that such is not the proper basis of recovery in this case; that, if liable at all, he was liable in the amount stipulated in his bond as liquidated damages for the breach thereof; and that by the express terms of his bond he is entitled to credit upon such amount for the sums that he has paid as monthly dues upon his stock. This contention was rejected by the trial court, and judgment and decree were rendered in accordance with the prayer of the complaint, and defendant appeals.

All the facts were stipulated. The case involves only questions of law. The trial court undoubtedly followed *Loan Co.* v. *Shain*, 8 N. D. 136, 77 N. W. Rep. 1006, and *Hale* v. *Cairns*, supra. In

the Shain Case this court held that where the owner of 30 shares of stock, of the face value of $3,000, borrowed $1,500 from the association, paying as bonus therefor 15 shares of said stock, and giving his note for the amount actually received, and securing the same by mortgage, and by transferring the remaining 15 shares as collateral, with an agreement upon his part to continue the payment of monthly dues upon all the stock until it was matured, with the privilege of then paying his loan by transferring the remaining stock absolutely, such party was not entitled, when an action to foreclose by reason of his default was brought by the association, to have his monthly dues paid credited upon his indebtedness. This case was immediately followed by the Cairns Case. There the association was insolvent. The only differences noted in the opinion between the contract in that case and in the Shain Case was the fact that in the Cairns Case the note or bond was given for the amount of money borrowed or advanced, and also for the amount of the premium bid, and all the stock was transferred as collateral in addition to the mortgage security. We held in that case that nothing could be recovered on account of the bonus or premium; that the consideration therefor was the expectation that the stock would be matured, and large profits thereon in the way of dividends would inure to the stockholders, and as the association, by reason of insolvency, was unable to mature its stock, such consideration had failed. Hence nothing could be recovered by way of premium, and, if anything had been paid thereon, the defendant was entitled to credit for the same. But, limiting the recovery to the amount borrowed, with interest, we held that defendant was not entitled to credit for the amounts paid as monthly dues upon stock; that the borrowing of the money and the purchase of the stock were separate transactions; that each must stand by itself, and that to allow defendant credit for monthly dues paid would give borrowing stockholders a great advantage over nonborrowing stockholders, and eventually throw all the loss upon the nonborrowing stockholders, and thus destroy the principle of mutuality, which is the basis of all such associations. Counsel for appellant in this case do not question the reasoning of these cases, or the authorities upon which they are based, or the conclusion reached from the premises assumed; but counsel do contend that this court did not properly construe the contract in the Cairns Case, the same being identical with the contract here involved. There are provisions in this bond and mortgage that were not specially noticed in the Cairns Case. The bond is for $1,600, but the exact conditions are so material in the case that we copy them in full: "The condition of the obligation is such that whereas, said Ingebor Olson has bid, in accordance with the by-laws of said association, the sum of eight hundred dollars as and for a premium for the advancement to her by said association of eight hundred dollars, by way of anticipation of the value at their maturity of sixteen shares of the capital stock of said association now owned by said Ingebor Olson; and whereas, said association

has this day advanced to said Ingebor Olson the sum of eight hundred dollars, in consideration of said premium, and by way of anticipation: Now, therefore, if the said bounden Ingebor Olson and Mathias Olson, their heirs, executors, and administrators, or any of them, shall well and truly pay or cause to be paid unto the said association, its certain attorney, successors, or assigns, at its said home office, on or before nine years from date hereof, the just sum of sixteen hundred dollars as aforesaid, together with interest on eight hundred dollars at the rate of six per cent. per annum from the nineteenth day of March, A. D. 1889, until paid, in money, payable monthly, or shall well and truly pay or cause to be paid unto said association, its certain attorney, successors, or assigns, at its home office, the sum of nine and 60-100 dollars, on the twenty-fourth day of each and every month hereafter, as and for the monthly dues on said sixteen shares of the capital stock of said association now owned by the said Ingebor Olson, and by her hereby sold, assigned, transferred, and set over to said association as security for the faithful performance of this bond, and shall also well and truly pay or cause to be paid all installments of interest aforesaid, and all fines which become due on the said stock, without any fraud or further delay, until said stock becomes fully paid in and of the value of one hundred dollars per share, and shall then surrender said stock to said association, then and in either of such cases the above obligation to be void, otherwise of full force and virtue: provided, however, and it is hereby expressly agreed, that if at any time default shall be made in the payment of said interest or the said monthly dues on said stock for the space of six months after the same, or any part thereof, shall have become due, or if the taxes and assessments on the property mortgaged to secure the faithful performance of this bond be not paid when due, or if the insurance policy or policies on the said mortgaged property be allowed to expire without renewal, then and in either or any such case the whole principal sum aforesaid shall, at the election of said association, its successors or assigns, immediately thereupon become due and payable, and the sum of ten hundred thirty-six and 80-100 dollars, less whatever sum has been paid said association, as and for the monthly dues on said sixteen shares of said capital stock, at the time of said default, may be enforced and recovered at once, as liquidated damages, together with and in addition to all interest and fines then due, and all costs and disbursements, including said taxes, insurance, and assessments, which have been paid by said association, anything hereinbefore contained to the contrary notwithstanding." There was a mortgage given to secure the payment of the money in accordance with the terms of the bond. All the facts were stipulated, and in addition to what appears from the bond, and the corporate capacity of the building and loan association, its insolvency, and the appointment of the plaintiff as receiver in Wisconsin, and his possession of the bond and mortgage as such receiver, it is stipulated that plaintiff had paid all monthly dues upon said stock from the time of the subscription

therefor to the time of insolvency, such payments amounting to the sum of $1,068, and had also paid all interest accruing upon said sum of $800, the amount of interest paid being $327.33

Perhaps we can the sooner ascertain the real meaning of this bond if we first consider what would have been the rights of the association under the bond had it continued solvent. It will be noticed that the limit of time for payment was nine years. It might be paid sooner, but could not run longer. There is also an absolute provision that the bond may be paid by maturing the stock and surrendering the same in payment. Should the stock reach maturity in five years, it could then be surrendered, and the bond taken up. But, as the limit was nine years, it is perfectly clear that it was the expectation of both parties that under no circumstances would it require more than nine years to mature the stock. Any shortening of that time would to that extent lighten the burdens of the stockholder. It will be noticed, also, that the amount fixed as stipulated damages is $1,036.80. This sum represents exactly the monthly dues of $9.60 on said 16 shares for nine years. In no event, then, could a defaulting borrowing stockholder avoid the payment of the full amount that it was estimated might be necessary under the most unfavorable circumstances to mature his stock. Now, if we assume that the association continued solvent, and that the defendant stopped the payment of monthly dues when he did, and refused to make further payments for the space of six months, what would have been the rights of the association? Learned counsel insist that the association would have had an option. They say that the bond unequivocally binds the defendant to pay the full sum of $1,600, either in cash, or by maturing his stock and surrendering it. Having defaulted in his payments, counsel say the association might claim the full $1,600 in cash, and enforce payment by sale of the mortgaged property; and, of course, on counsel's theory, there could be no deduction for stock dues paid. Or, say counsel, the association might elect to foreclose for the stipulated damages, less stock dues paid. In this case the payments exceeded the damages, and necessarily, upon this basis, the association would take nothing. The contention therefore reduces itself to this: The association had its option to take $1,600 or to take nothing. We deem no argument necessary to refute that position. The fact is, the option, so far as one existed, was entirely with the defendant. He might pay in cash the full face of the bond, or he might continue his payment of dues until he had paid 100 cents on the dollar on his stock, and then surrender his stock and demand his bond, or he might make his payment of dues until he had paid the sum of $1,036.80, and, the other conditions being complied with, he might safely stop. The proviso in this bond (and neither counsel nor court have found its exact equivalent elsewhere) modifies and changes, and to some extent defeats, all that precedes it. It declares: "And the sum of ten

hundred thirty-six and 80-100 dollars, less whatever ˙sum has been paid said association as and for the monthly dues on said sixteen shares of said capital stock at the time of said default, may be enforced and recovered at once, as liquidated damages." Counsel cite the use of the word "may" as indicating an option in the association. The word "must" would have forced the association to sue, whether it so desired or not. The parties had no such purpose. But, if it did sue, the recovery was limited to the amount there stated,—in the language of the proviso, "anything hereinbefore stated to the contrary notwithstanding." Now, if we assume further, under the conditions already assumed, that the association brought an action against the defendant on the bond and mortgage, and that the defendant set up the payment as here stipulated, what judgment could the court render against the defendant? For the full $1,600? Clearly not. For the advancement of $800? Clearly not. For the $1,036.80, as the liquided damages? Clearly not. It could only render judgment for the balance remaining after deducting payments from the stipulated damages. As in this supposed case the balance would be on the wrong side, no judgment whatever could be rendered against the defendant. To our minds, it is clear and certain that the association must have failed in any action it might have brought against this defendant. Taking that as true, another result is inevitable; and that is that this bond and mortgage were never given to secure the sum of $1,600 or $800 advanced, but to secure the payment of the stock dues for the period of nine years, and no longer. We must not be understood as holding that if the defendant had not fully paid for his stock, either in money or by profits properly credited, he cannot be required to make further payments. When he subscribed for the stock he became bound, upon elementary principles,—at least, so far as the creditors of the corporation are concerned, and irrespective of any question of loan or advancement,— to pay for his stock in full. That obligation still remains in full force, just as it does on the part of all nonborrowing stockholders, but, beyond the time limit already indicated, that obligation is not secured by the bond and mortgage. Neither do we hold that the association bound itself in any way to receive or treat the stock as mature at the end of nine years. Such a contract on its part might be *ultra vires*. See *King* v. *Investment Union* (Ill. Sup.) 48 N. E. Rep. 667; *Weirman* v. *Investment Union*, 67 Ill. App. 550. But there is no such contract involved in this transaction. Another suggestion intrudes itself here. Let it be granted for the moment that defendant, by his bond, agreed absolutely to mature his stock; what evidence have we in this case that his stock was not mature when he ceased payments? Counsel say that the fact that the association is insolvent proves that it was not. But is that true, in the sense in which the words are used in the bond? When the defendant undertook to mature his stock, did he assume liability for the defaults and delinquencies of all the other holders of stock in his series, and obligate himself to continue payments until all the

stock of the association was matured? This will hardly be claimed. What evidence have we, then, that defendant's stock was not mature? He had continued his payments beyond the furthest limit that was estimated to be required to mature the stock. He had paid in dues and interest about $1,400. Certainly, if we take this investment as an average sample of the business of the corporation, the stock had been mature for several years. Were the association plaintiff herein, it would fail, as the evidence stands, even upon the theory that defendant was bound by the terms of the bond and mortgage to mature his stock. But, as already stated, no such obligation rested upon him under the terms of his bond.

We have in this case, then, the receiver of a corporation suing upon a contract under which it is certain the corporation would have no right of action against the defendant. It will be conceded that ordinarily a receiver would have no greater rights than the corporation. If a party borrow $1,000 from a bank, and give his note for the amount, due in one year, and secured by a mortgage, and if the following day the bank go into the hands of a receiver, such officer has no other or greater rights as against the borrower, than the bank had. Any defense that could have been urged as against the bank can be urged as against the receiver, and, whether there be any defense or not, the receiver cannot sue upon the note until the expiration of the year. The plea that it is necessary to realize at once upon the assets of the bank will not avail. The borrower may stand upon the letter of his contract. These principles are elementary. See High. Rec. § § 201, 204, 205, 247, 315. It is also the universal holding in this country that the capital stock of a corporation is a trust fund for the benefit of creditors, to which they may look, and upon which they may rely for the payment of their claims, and their rights thereto are superior to any rights of stockholders therein. Creditors may always assume that stock subscriptions have been paid in full or are subject to call. Thomp. Stockh. § 11; Cook, Stock, Stockh. & Corp. Law, § 42. From this doctrine it follows that were the note to the bank already mentioned given as the purchase price of stock in the bank, for which the party subscribed, and the bank was subsequently placed in the hands of a receiver, such receiver might at once proceed to collect the unpaid money on the stock subscription. But in so doing he repudiates the express contract for payment, and relies upon the contract which the law raises by reason of the subscription. Id. § § 71, 108. For the enforcement of that contract he must look to the subscriber's general responsibility, and cannot rely upon the mortgage lien, because that is a part of the contract which is repudiated. Of course, the receiver might await the maturity of the note and enforce the express contract, but he need not do so. In this instance it may be that the receiver would have a right of action that was not open to the corporation, as it has been held that a sale of stock, to be paid for within a reasonable time, was valid between the corporation and the purchaser. *Mitchell* v. *Beckman,* 64 Cal. 117. But this ex-

ception arises from the fact that, in favor of creditors, the law conclusively presumes that all stock subscriptions have been paid for in full, or are subject to call. The general rule is that a corporation may contract with its stockholders in the same manner and to the same extent as with other persons, and a stockholder who is indebted to the corporation occupies a dual relation,—one as debtor, the other as stockholder,—and these relations are entirely independent of each other. *Ely* v. *Sprague,* 1 Clarke, Ch. 351. And in enforcing collection against a stockholder the corporation has no other or greater right than it has in enforcing the collection of an indebtedness of any other person, except that it may be that a statute or the charter or by-laws give the corporation a lien on the stock for the indebtedness of a stockholder. It may be of benefit to keep these general principles in view in the further investigation of this particular case.

Counsel in this case insist that the equitable principles so often applied by courts in actions brought by receivers of insolvent building and loan associations to collect. amounts loaned or advanced to its members must be applied here, and that this defendant must be required to repay the amount advanced with interest thereon, and can claim no credit for stock dues paid. We need not question plaintiff's right to recover back money advanced by the association to the defendant. We are not concerned upon that point. We are only concerned in determining whether or not this mortgage in the hands of this receiver can be held to secure such payment. This mortgage forms a part of the contract between the association and the defendant. As already stated, the mortgage was not given to secure the face amount of the bond, or to secure the amount advanced, but was given to secure what the association could recover under the bond in case defendant made default, and that was the monthly stock dues and interest payments for the space of nine years. The Supreme Court of Wisconsin, in *Leahy* v. *Association,* 100 Wis. 555, 76 N. W. Rep. 625, said: "Thus it seems that, as the corporation is defunct, membership ceases, and all contracts must therefore, of necessity, be set aside. It is upon the theory of the rescission and abrogation of the contracts that equity steps in and winds up its affairs, and makes a ratable distribution of assets." And in *Knutson* v. *Association,* 67 Minn. 201, 69 N. W. Rep. 889, it was said: "Then in winding up such a corporation, we can see no principle on which to proceed in adjusting matters between it and its members, except the principle of rescission, so far as the same can be equitably and justly applied." Yet we do not understand that these cases, or any other, treat the insolvency of the association as working an absolute rescission and extinguishment of the contract. But they do hold, and for reasons that have often been stated, that such insolvency necessarily works a modification of the contract. The modification usually introduced is to the effect that whatever is secured by the mortgage becomes presently due upon insolvency of the association. In those states where it is held that the contract of subscription and the contract of advancement or loan are indissolubly connected, and

that the real purpose of the security is to secure the payment of stock dues until such dues equal the amount of the advancement or mature the stock, and when in all cases of foreclosure it is held that the mortgagor is entitled to credit for all dues paid, it may, upon the general principles already considered, logically be held that the monthly dues, representing, as they do, payments upon subscription to capital stock, are presently due upon insolvency, and the receiver, acting in the interests of creditors, may at once collect the unpaid subscription to capital stock. We cite as cases of this character *Association* v. *Zucker*, 48 Md. 448; *Association* v. *Buck*, 64 Md. 338, 1 Atl. Rep. 561; *Buist* v. *Bryan* (S. C.) 21 S. E. Rep. 537, 29 L. R. A. 127. But in those jurisdictions where it is held that the subscription contract and the loan or advancement contract are entirely distinct and separate, and that the mortgage is given to secure the loan or advancement, and that the mortgagor, in case of foreclosure, is entitled to no credits for payments upon stock subscription, and that, as said in *Post* v. *Association* (Tenn. Sup.) 37 S. W. Rep. 217, 34 L. R. A. 201, "the relation of borrower and stockholder are separate and distinct," it may be somewhat difficult to find a logical basis for holding that the debt which the party owes as a borrower, and the maturity of which, by the terms of his borrowing contract, is yet in the future, is made presently due by the insolvency. Ordinarily a man's property can be sold under a contract lien only in conformity to the letter of his contract. Many of these associations are authorized to loan funds to parties not stockholders. We do not think it would be contended for a moment that this rule could be applied to such borrowers . And if it be the law that a corporation may contract with its stockholders and in enforcing all such contracts, with the single exception of the stock subscription contract, such stockholder has the same rights as other contracting parties, it becomes still more difficult to appreciate the force of the principle that declares these mortgages presently due. We cite, as among the leading cases on this point, *Rogers* v. *Hargo*, 92 Tenn. 35, 20 S. W. Rep. 430; *Strohen* v. *Ass'n.*, 115 Pa. St. 273, 8 Atl. Rep. 843; *Weir* v. *Ass'n.* (N. J. Ch.) 38 Atl. Rep. 643; *Curtiss* v. *Association*, 69 Conn. 6, 36 Atl. 1023. This point was not presented or decided in the Cairns Case, nor is it involved here, because, if there existed any liability whatever upon the bond and mortgage in suit, it was mature, by the terms of the bond, when the action was brought. But the cases cited will show that, while insolvency has been permitted to hasten the maturity of a claim, it has never been allowed to change the purpose of the security. Courts which hold that the mortgage secures monthly dues, when the action is brought by a solvent corporation, hold the same when the action is brought by a receiver, and courts that hold that the mortgage was given to secure the loan or advancement adhere to such holding when the action is by a receiver; and, indeed, courts which hold the two contracts distinct and separate, and sometimes allow a credit on the mortgage indebtedness of the withdrawal value of the stock as

against solvent associations, refuse such credits when the action is by a receiver. We have found no case where it was held that the mortgage might secure the loan, and also the monthly dues, as distinct obligations. Courts expressly refuse so to do. See the Shain Case, supra, and *Fagan* v. *Association* (Minn.) 57 N. W. Rep. 142. Neither, we confidently assert, can any case be found where a receiver of one of these insolvent associations has ever been permitted to recover, upon the contract, a larger sum than the association might ultimately have recovered had it remained solvent. It follows, then, that, since this mortgage was given to secure the payment of the monthly dues for nine years; it was not, and could not be, by the .fact of insolvency of the mortgagee, transmuted into security for a separate indebtedness in the sum of $800; and, what it did.secure having been paid in full before the action was brought, plaintiff must fail.

But learned counsel earnestly contend that the proviso in this bond containing the liquidated damages clause cannot avail as against this plaintiff, because it declares that "if at any time default shall be made," etc. It is said that this proviso becomes operative only upon default, and it is conceded that defendant was not in default, hence the liquidated damage clause does not apply. Of course, when the bond was drawn it was supposed that no right of action could accrue thereunder without defendant's default. The language used was intended to cover any condition that enabled an action to be brought upon the bond. We are cited to no case which has held that such clause would not apply whenever a cause of action accrued against defendant. Any other construction would be narrow, and would lead to most inequitable, not.to say absurd, results. Suppose that, on the day that defendant received his advancement and executed his mortgage another stockholder had received the same advancement and executed similar papers. Suppose such other party had continued his payments for eight years and six months, and then ceased. Defendant continued his payments for six months longer, or until the expiration of the nine years. Immediately thereafter a receiver is appointed. When he sues such other party to recover the money advanced to him, such party might, on counsel's theory, compel him to sue for the liquidated damages, because such party was in default for six months, and he would then be entitled to credit for monthly dues paid for eight years and six months. When the receiver sues this defendant no such claim can be made, counsel says, because there is no default. Hence defendant must pay his full advancement, and get no credit for monthly dues paid for nine years. In other words, the contract places an immense premium upon the default. We cannot so construe it.

But it is further insisted that this contract, under the construction which we give it, defeats the basal principle of mutuality upon which building and loan associations are founded. We fully recognized that principle in the Cairns Case, and we do not depart from it in the least. That principle requires us to assume that all contracts

of such an association with its members are intended to preserve such mutuality, and, if it were clear that any such contract necessarily violated or destroyed that principle, it might be the duty of a court, following such presumption of intention, to disregard even the express terms of the contract. But we are confronted with no such necessity. While we presume that this contract was intended to preserve the principle of mutuality, there certainly is nothing in the case to indicate the contrary, and nothing to show that it has not in all respects answered the purpose. If we could indulge any presumption, it would be that this defendant had paid more than his proportion of all losses. He has paid beyond the utmost amount that was considered necessary to mature his stock. It is certain that, had all stockholders been equally prompt in the performance of their obligations, there never could have been any loss to the association, except upon the basis of gross incapacity or criminality on the part of its managing officers. Counsel use the argument so often used by courts,—that to permit a borrowing stockholder to deduct from the amount advanced to him his payments on stock subscription dues would eventually throw all losses upon the nonborrowing class. But that position ignores the fact that in this instance the payments are not deducted from the advancement, but from a much larger sum; *i. e.* the sum calculated to be sufficient in any event to mature the stock. That was the principle adopted by this association to preserve mutuality. As we have said, we find it in no other association. It may be all wrong in principle. The event may demonstrate that it does not preserve mutuality, but we certainly cannot say so from the data before us. But for another reason the principle of mutuality cannot be destroyed. We have already said that this bond and mortgage did not secure the payment of stock subscription dues until the stock was mature, but only for the limited term of nine years. If this defendant's stock be not in fact mature, his liability under his original subscription contract remains in full force, and this receiver has the same powers and rights in enforcing it that he would have in enforcing the liability of any nonborrowing stockholder upon his unpaid stock subscription. But he is not seeking here to enforce that liability. He is suing on the contract. The utmost that the association could ever have recovered upon that contract had been paid before the receiver was appointed. He can recover no more on the contract. We may not substitute for the contract which the parties did make a contract which we may think would have been better. The plaintiff must fail in the action. It is the judgment of this court that this action be dismissed, with costs of both courts to defendant. The District Court will set aside its judgment, and enter judgment accordingly. All concur.

## SUPPLEMENTAL OPINION.

After the foregoing opinion had been handed down, our attention was called to the fact that a mistake had been made in the stipulation of facts upon which the case was presented, and that the full

amount of liquidated damages as stipulated in the bond had not and has not been paid. The mistake arose in this way: The original stock subscription was for 20 shares of stock. Only 16 of these shares were involved in the loan or advancement transaction. But stock dues were regularly paid upon the full 20 shares, and the payments so made amounted to the said sum of $1,068. Upon the 16 shares only $854.40 had been paid, leaving an admitted balance of $182.40 in order to make the liquidated amount of $1,036.80. But appellant insists that he owes this sum to the general receiver appointed in Minnesota, that such receiver has the legal title to the bond and mortgage, and that the plaintiff herein, as the receiver appointed by the courts of Wisconsin, has no title thereto, and can maintain no action thereon. This contention compels us to pass upon the question suggested in the original opinion, but which, on the record as it then stood, was not necessarily involved.

As stated in the original opinion, the bond and mortgage here in suit, with other securities, amounting in the aggregate to over $100,000, were deposited by the American Savings & Loan Association with the treasurer of the State of Wisconsin, for the benefit of the members and creditors of such association in such state. Such deposit was a condition precedent, and upon which such foreign corporation was permitted to do business in said state. See Sanb. & B. Ann. St. Wis. § § 2014-2017. It is urged that such deposit was in legal effect an assignment of the bond and mortgage, and as such was utterly destructive of the contract between defendant and said association, as such contract contemplated and was based upon the proposition that such association should receive and reinvest all stock dues and interest, and the same should inure proportionately to the benefit of defendant, and hasten the maturity of his stock. The premise upon which this contention is based is unsound. The deposit did not take away the legal title of the association to the securities. The statute of Minnesota under which the association was created, and which is now section 2860, Gen. St. 1894, required such association to keep all mortgages or other securities received by it on deposit with the treasurer of that state, or a duly chartered trust company, approved by the public examiner of such state, but also provided that when the association desired to do business in another state, the laws of which required a deposit in that state, sufficient of such securities to enable the association to do business in such other state might be withdrawn from Minnesota and deposited in such other state. The effect of the deposit was the same in the two cases, and the purpose in each was to secure the faithful application of such securities, and the legal title was not effected. The statute of Wisconsin expressly provided that all stock dues and interest paid upon securities deposited should be received, retained, or reinvested by such association so long as it remained solvent. This in no manner destroyed the basis of the original contract. It is urged however,—and this is the point upon which appellant chiefly relies, —that the deposit of the securities by the directors of the association

in the state of Wisconsin, and for the purposes required by the laws of that state, was an act *ultra vires,* in that by such deposit the stockholders resident in Wisconsin were given a preference and superior right over other stockholders, and thus the principle of mutuality—the basis upon which such associations rest—was destroyed. This contention, in all its phases, was urged before the Supreme Court of Wisconsin in *Lewis* v. *Association,* 98 Wis. 203, 73 N. W. Rep. 793, 39 L. R. A. 559. That was the same association here involved. Lewis, a stockholder residing in Wisconsin, brought his action for the express purpose of having the securities that had been deposited with the state treasurer of Wisconsin applied first to the satisfaction of the creditors and members resident in Wisconsin. The association was already insolvent, and Mr. Hale had been appointed general receiver by the District Court of Hennepin county, Minn. He asked to be made a party defendant in that action, and, having been so admitted, he filed his answer, setting forth at great length all the matters here relied upon as a defense. A demurrer to the answer was sustained, and this holding was affirmed. The Supreme Court of Wisconsin, in deciding the case, first call attention to the well-settled principle that a corporation chartered in one state is a foreign corporation as to all other states, and has no natural or inherent right or authority to transact business in such other states, but may be excluded thereform, and if admitted, by comity between the states, to do business in any other state, it must be upon such terms and conditions as such state may impose. From that principle it necessarily follows that the State of Wisconsin had a clear right to require the deposit of securties as a condition precedent to the transaction of business by the association in that state. That court further held (and we think it clearly correct) that the statute of Minnesota under which this association was organized contemplated and authorized the extension of the business of the association· to other states, and recognized the fact that compliance with the laws of such other states would be necessary. Further, as one of the purposes of the association was the extension of its business into other states, the association had the power to make the deposit, as incident to the accomplishment of the purpose of its creation. From this it follows that the authority of the association, acting through its directors, to make the deposit, if not expressly granted by the statute which stands as the charter of the association, was at least impliedly granted. Counsel in this case concede that the stockholders in a corporation are conclusively bound by the action of its board of directors, acting within the scope of its express or implied authority, but they insist that there can be no authority in the board of directors of a building and loan association to depart from the principle of mutuality upon which such associations are based. However broad that principle may be, whenever an association is authorized to transact business in different states, and compliance with the varying laws of such states renders strict mutuality impossible, it must necessarily be held that, by the mutual consent of

all stockholders, the principle has been waived or abandoned to the extent required by such varying statutes. In the case of *Lewis* v. *Association,* supra, the court also based its holding upon the ground of estoppel, and said: "It is well settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract in question has been in good faith fully performed by the other party, and the corporation has the full benefit of the performance of the contract. Much less will the claim that the transaction was *ultra vires* be allowed as a ground for rescinding the contract, and restoring to the complaining party, on that ground, the property or funds with which he has parted, after he has had the benefit of full performance of the contract by the other party; and, in general, the plea of *ultra vires* will not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong. *Kadish* v. *Association,* 151 Ill. 531, 38 N. E. Rep. 236; *Arms Co.* v. *Barlow,* 63 N. Y. 62; *Bank* v. *Mathews,* 98 U. S. 628, 629, 25 L. Ed. 188. 'Where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded on it, to question its validity. It would be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract, the fruits of which he retains.' Sedg. St. & Const. Law, 73. In 2 Beach, Priv. Corp. § 425, the subject is fully considered, and numerous modern authorities are cited, showing that 'where a contract has been in good faith fully performed, either by the corporation or the other party, the one who has received the benefit of it will not be permitted to resist its enforcement by the plea of a mere want of power.' *Darst* v. *Gale,* 83 Ill. 136; *Carson City Sav. Bank* v. *Carson City Elevator Co.,* 90 Mich. 550, 51 N. W. Rep. 641; *Holmes & Griggs Mfg. Co.* v. *Holmes & Wessell Metal Co.,* 127 N. Y. 260, 27 N. E. Rep. 831; *Raft Co.* v. *Roach,* 97 N. Y. 378; *Bradley* v. *Ballard,* 55 Ill. 415; *State Board of Agriculture* v. *Citizens' St. Ry. Co.,* 47 Ind. 407; *Oil Creek & A. R. R. Co.* v. *Pennsylvania Transp. Co.,* 83 Pa. St. 160, 166." It would be surprising if the law were not as indicated by these authorities. In this case the association, by complying with the condition prescribed by statute, received a license to do business in Wisconsin. It did business in that state for years. It received all the benefits arising from such business. It cannot return those benefits, and every principle of equity forbids that it should now be permitted to repudiate the condition upon which they were received. It follows that the receiver appointed by the Wisconsin court is the proper party to enforce the securities that had been deposited in that state. The order for the judgment heretofore made in this case is set aside. The District Court is ordered to render judgment for plaintiff for the sum of $182.40, with interest at 6 per cent. per annum from December 24, 1895, with the usual decree of foreclosure against the land described in the complaint. Plaintiff

will also recover the costs of the District Court, including an attorney's fee of $25, and no more. The defendant will recover full costs and disbursements in this court. As thus modified, the judgment of the District Court is affirmed. All concur.