STATE ex rel. BISHOP v. MOREHOUSE et al., Trustees of Fish Springs School District No. 13, Juab County.

No. 2139. Decided November 25, 1910 (112 Pac. 169).

1. MANDAMUS—PURPOSES OF RELIEF—PERFORMANCE OF OFFICIAL DUTY. To authorize a writ of mandamus against a public officer, relator must show a clear right to the performance of the act demanded with the corresponding duty upon the officer to perform such act. (Page 238.)

2. MANDAMUS—PURPOSES OF RELIEF—ACTS OF PUBLIC OFFICERS—DISCRETIONARY ACTS. The action of a public officer which requires the exercise of discretion will not be reviewed by mandamus, unless he is guilty of a clear and willful disregard of duty or acts capriciously or with partiality. (Page 238.)

3. MANDAMUS—SUBJECTS OF RELIEF—ACTS OF PUBLIC BOARDS—SCHOOL TRUSTEES. Comp. Laws 1907, section 1816, requires the trustees of a school district to maintain schools or change or discontinue. Section 1824 provides that, if a petition is signed by persons charged with the support of fifteen or more children of school age, the trustees may maintain a school, and section 1825 requires them to fix the terms of the school, and so arrange the terms as to furnish school privileges equally to all pupils of school age, and permits the discontinuance of any school when the average attendance for twenty consecutive days is less than eight. A school district which was situated upon a desert was, in order to procure a sufficient number of pupils, divided into three divisions, each of which was so far from the other that the children in one division could not attend school in either of the other divisions. The number of pupils in the smallest division hardly exceeded three, those in relator's division numbered nine, while the third division had as many pupils as both of the others. Heretofore a term of school was held each year in each division, but the trustees only required school to be held in the largest division during the current year, and

refused to hold a term in relator's division, though sufficient funds were available for that purpose. *Held*, that the circumstances stated did not authorize the granting of mandamus to compel the trustees to hold a term of school in relator's district. (Page 241.)

Application for mandamus by the State, on the relation of Alfred J. Bishop, against George W. Morehouse and others as trustees of the Fish Springs School District No. 13, Juab County, State of Utah.

APPLICATION DISMISSED.

*J. W. Thompson* for plaintiff.

*A. R. Barnes* for defendants.

FRICK, J.

Plaintiff applied for an alternative writ of mandate against the defendants as trustees of the Fish Springs School District in Juab County, Utah. After alleging the official capacity of the defendants and other jurisdictional facts, the plaintiff, in substance, alleges that said Fish Springs School District, for the convenience of the school children residing therein, was divided into three divisions, which are know as "Callao," "Trout Creek," and "Ragan" divisions respectively; that the plaintiff is a resident and taxpayer of said Trout Creek division in said Fish Springs district, is the father of two children of school age, both of whom live with him, and are desirous of attending school in said division; that, in addition to plaintiff's said children, there are "at the present time" seven other children of school age residents of said division and whose parents are taxpayers therein; that the children last named "are accustomed to and entitled to the right of attending school in said division," and, if a peremptory writ be granted, will attend school in said division; that said Fish Springs School District is situated in the extreme westerly portion of Juab County, and is practically within the Great Salt Lake Desert, where

there are but few residents, all of whom live widely apart from one another; that the divisions aforesaid are so located that the town of Callao, in Callao division, is about twenty miles north of the town of Trout Creek, in Trout Creek division, and the town of Ragan, in Ragan division, is about twenty miles south of Trout Creek; that it is impracticable, if not impossible, for the children of the three divisions, or of any two of them, to attend school at the same place; that, by reason of that fact, Fish Springs School District was divided into divisions as aforesaid, and, while three terms of school have heretofore been held annually in said district, one of said terms in each year was held to one of said divisions for the convenience of the children resident therein; that there are not fifteen children of school age resident within any one of the divisions aforesaid; that, since the beginning of the current year, school has been held only in Callao division, and the defendants as the trustees of said school district declare it as their intention and purpose and will continue the school in said Callao division, and refuse to hold a term of school in said Trout Creek division, although they have been requested to do so; that there are sufficient funds available for school purposes derived from taxes levied and paid in said Fish Springs district to hold school for a period of nine months in said district, and thus to hold a term of school in each one of said divisions, and that a place to hold such school can be obtained in each one of said divisions, and that it is entirely practicable to hold a term of school in each one of said divisions; that said defendants as the trustees of said school district, arbitrarily and capriciously refuse to do their duty in providing proper facilities and conveniences for holding school in all of said divisions, and arbitrarily refuse to cause a term of school to be held in any division except said Callao division, by reason of which the children of plaintiff and those of other parents similarly situated are wrongfully deprived of school privileges. For the foregoing reasons, it is contended that this court should issue a peremptory writ of mandate requiring said defendants as the trustees of Fish Springs School

District to cause a term of school to be taught in said Trout Creek division.

The Attorney General appeared for the defendants, and in their behalf has filed a general demurrer to the petition. The case was submitted upon the demurrer by both parties. The only question for solution is: Does the law when applied to the facts stated in the petition authorize this court to direct the defendants by a writ of mandate to do what the petitioner demands from them? The solution of this question, to some extent, depends upon the duties that the statute imposes upon the defendants. Section 1816, Comp. Laws 1907, provides that the trustees "shall organize, maintain and conveniently locate schools for the education of the children of school age within the district, or change or discontinue any of them according to law." Section 1824, in substance, provides that, if a petition is presented to the trustees which is signed by persons who are charged with the support and who have the custody and care of fifteen or more children of school age, the trustees may organize, locate, and maintain a school and employ a teacher for such children. By section 1825 it is provided that the trustees shall determine and fix the length of time that school shall be taught in the district in each year and when each term shall begin and end; that the trustees "shall so arrange such terms as to accommodate and furnish school privileges equally and equitably to pupils of school age. . . ." And, further, that "any school may be discontinued when the average attendance of pupils therein for twenty consecutive days shall be less than eight." From what is contained in the foregoing sections no one can doubt that it was the intention of the legislature to vest the trustees with the power of exercising at least some judgment and discretion in discharging their official duties. If this be so, then our inquiry must be (1) whether the plaintiff is clearly entitled to what he demands; and (2) whether it is clearly the duty of the defendants to act, or if in granting the writ we would not be merely substituting our judgment for that of the trustees in so far as they have refused to comply with plain-

tiff's demands. Of course, if the trustees had refused to act at all, instead of refusing to act in a particular way, or in doing a particular thing, the case might be different.

Upon the question of how and under what circumstances courts ought to grant the writ of mandate against public officers, the law is well and tersely stated by Mr. High in his excellent work entitled High's Extraordinary Legal Remedies (3d Ed.), section 32, in the following language:

"And, to warrant a court in granting the writ against a public officer, such a state of facts must be presented as to show that the relator has a clear right to the performance of the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing. And when substantial doubt exists as to the duty whose performance it is sought to coerce or as to the right or power of the officer to perform such duty, the relief will be withheld."

Where there is a discretion vested in the officer, the rule generally applied is stated by the author in section 41 of Merrill on Mandamus in the following words:

"But the action of an officer in a matter which calls for the exercise of his discretion or judgment will not be reviewed by the writ of mandamus unless he has been guilty of a clear and willful disregard of his duty, or such action is shown to be extremely wrong or flagrantly improper and unjust, so that the decision can only be explained as the result of caprice, passion or partiality."

In speaking of the general rule which is ordinarily applied by the courts in passing on the question whether the writ should be granted or withheld, Wood on Mandamus, etc., at page 51 of his work, says: "And generally it may be said that a mandamus will not be issued unless the duty it is sought to enforce is a *legal* duty, clear and free from doubt, and the right of the party seeking redress through this summary remedy is equally clear."

In view of the facts stated in the petition when applied to the provisions of our statutes to which we have referred, and in the light of the law as contained in the foregoing

quotations, can we say that it is clearly the legal duty of the defendants to comply with the demands of the petitioner? Again, if in our judgment as reasonable men the defendants, under the conditions stated in the petition, should have continued to hold a term of school in each one of the divisions, or in any two of them, is their refusal to do so, in view of all the facts and circumstances, of that character as will make such refusal "extremely wrong, or flagrantly improper and unjust?" And, further, can it be in reason said that their refusal is clearly "the result of caprice, passion, or partiality?" The conditions confronting defendants were, to say the least, extraordinary, if not unique. In our judgment it requires but slight reflection to perceive that in view of all the circumstances different men equally honest and equally desirous of discharging their duty might nevertheless arrive at different conclusions with respect to what was the best, if not the wisest, course, to pursue in maintaining a school in a district situated like the Fish Springs District. Here are three settlements situated upon a desert. All three must unite in order to have the legal number of pupils to authorize the organization and maintenance of a school. One of these settlements, Callao, has at least as many pupils of school age as the other two combined, if not more. Each one of the settlements is so far distant from the other that the children in any one cannot attend school in either of the other settlements. The number of pupils in the smallest settlement, Ragan, is not shown, but it was conceded at the hearing to be a small number, perhaps not to exceed there. In Trout Creek division, which is the next in order with respect to the number of pupils, it is alleged that "at the time" of the application the number in that division was nine. The manner in which this statement was made is significant, for the reason that in the first petition the number was not stated with any degree of certainty, and the Attorney General objected upon that ground. The petitioner then amended his statement, and in the amended statement the qualification is made as above stated. From this statement it cannot be determined with certainty

how long there have been nine pupils in Trout Creek, nor how long that number will probably remain therein. As we have seen, the trustees may discontinue a school if the "average attendance of pupils therein for twenty consecutive days shall be less than eight." If the trustees, therefore, may legally discontinue a school in an entire district when there are less than that number of pupils attending school therein, how can the trustees be compelled to provide a school in an independent settlement of a district, unless it is clearly made to appear that there will be at least the average number of pupils required by the statute that will attend the proposed school? In the other division, as we have seen, the number of pupils is conceded to be below the statutory requirement. If it be assumed that in case a school district is divided like the Fish Springs district, the courts may, by mandamus, require the trustees of the district to provide a school in each division if the number of pupils in each comes up to the statutory requirement; yet, in view that a school may be discontinued unless that number of pupils do attend, how can it be said that it is the legal duty of the trustees in this case to provide a school for each division of the district, or for two divisions, when it is conceded that in one of the divisions the number is less than the statute requires and in the other the question, to say the least, is left in doubt? Moreover, the statutory requirement that the trustees "shall arrange such terms as to accommodate and furnish school privileges equally and equitably to pupils of school age" cannot be given literal application. This provision was intended to apply to ordinary school districts, when conducted under normal conditions. In the ratio that we depart from such conditions, in that ratio must the good judgment and sound discretion of the trustees in conducting the school be given force and effect. It is obvious that under such conditions absolute equality with respect to school facilities is an impossibility. Indeed, that ideal standard can only be approached under normal conditions. When the pupils can and do attend school, no doubt they must be given equal privileges in the school, and, where it is a large district and

there are young pupils, the terms of school, in a rigorous winter climate, should be so regulated as to afford those of tender years as well as the older ones an opportunity to attend school by keeping a summer as well as a winter term in the district. In this regard much must be left to the sound discretion and judgment of the trustees on whom the duty to regulate such matters is placed. Courts should not interfere by mandamus unless it is clear that the school trustees are refusing to discharge a plain legal duty or that they are arbitrarily, capriciously, or unjustly refusing to exercise their powers to the injury of a complainant. Assuming, therefore, that all of the facts well pleaded in the petition are true, as we must do, yet we are clearly of the opinion that they are insufficient to authorize us to interfere, and thus control the defendants in their judgment of what should be done in the premises.

We remark in closing that no doubt the petitioner, and others similarly situated, if practicable, should be provided with school facilities for their children, if for no other reason than that, if the children are deprived of the advantages of education, they may suffer irreparable injury, while their parents are denied the ordinary rights of taxpayers. To prevent such results, the law has wisely placed the arrangement for and the conduct of district schools in the hands of local officers who are on the ground, and, as a general rule, are both taxpayers and patrons of the school, and thus they usually possess both the opportunity and the inclination to do what is best for all concerned under all circumstances. While the control of these officers is not absolute, yet courts should be slow in interfering with their management of the schools, lest long range interference might result in greater injustice than that which the courts are seeking to cure.

From what has been said it follows that the demurrer ought to be, and it accordingly is, sustained; and, in view that the defects in the petition cannot be cured by further amendment, the application is hereby dismissed.

STRAUP, C. J., and McCARTY, J., concur.