## CARBON COUNTY et al. v. CARBON COUNTY HIGH SCHOOL DIST. et al.

No. 2645. Decided September 2, 1914 (143 Pac. 220).

SCHOOLS AND SCHOOL DISTRICTS—OFFICERS—BOOKS OF ACCOUNT—IN-SPECTION BY COUNTY COMMISSIONERS—STATUTES. Comp. Laws 1907, section 511, subd. 3, provides that the county commissioners shall supervise the official conduct of all county officers and officers of all precincts, districts, and other subdivisions of the county (except municipal corporations), see that they faithfully perform their duties, and, when necessary, require them to renew their official bonds, make reports, and present their books and accounts for inspection; subdivision 4 authorizes them to examine and audit, at least every six months, the accounts of all officers having the care, management, collection, or disbursement of moneys belonging to the county or appropriated by law or otherwise for its use and benefit; and section 1866 makes it the duty of the county treasurer to receive and hold, as a special school fund, subject to the orders of the county superintendent, all public moneys from whatever source received, and pay the same when apportioned to the district treasurers. He is also required, on or before August 1st of each year, to make a report to the board of county commissioners, who shall audit the same, and to the state superintendent in such form as he shall direct, showing certain specified facts with reference to the school fund account. *Held* that, since a county has nothing to do with either the funds or officers of a high school corporation nor any interest in its funds, such statutes do not

confer on county commissioners authority to compel the officers of a high school district within the county to submit their books of account for audit and examination at the instance of such commissioners.

Appeal from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Application by Carbon County and its County Commissioners for a writ of *mandamus* against the Carbon County High School District, C. C. McWhinney, its clerk, and A. Hunter, its treasurer, to compel respondents to deliver to petitioners the books of account kept by respondents as officers of the high school district, for inspection and audit.

Judgment sustaining a general demurrer and dismissing the proceeding. Petitioners appeal.

AFFIRMED.

*O. C. Nelson* and *Allen T. Sanford* for appellants.

*M. P. Braffet, S. A. King* and *Ferdinand Ericksen* for respondents.

FRICK, J.

This is an appeal from a judgment of the District Court of Carbon County, sustaining a general demurrer and dismissing appellants' application for a writ of mandate against the respondents named in the title. The county commissioners of Carbon County, after making a demand upon the officers of the Carbon County high school district, who constitute the individual respondents here, to permit an accountant, selected by said commissioners, to inspect and audit the books of account kept by said officers in their official capacity, and after permission to do so was refused by said officers, said commissioners, in the name of appellant county, filed an application in said district court praying for a writ of mandate to require said officers to permit an accountant selected as aforesaid to inspect and audit the books aforesaid. The respondents appeared and filed a general demurrer to the application, which was sustained, and the appellants refusing to amend the application, but elect-

ing to stand thereon, the District Court entered judgment
dismissing the application, and hence this appeal.

It is not necessary to refer to the averments of the applica-
tion, except to say that it is based entirely upon the statute,
without alleging any misconduct or misapplication of funds
by the officers of the school district or otherwise, or that
there is a shortage, or that the account books are not
correctly or properly kept. The provisions specially relied
on by appellant, and upon which the application is based,
are found in Comp. Laws 1907, section 511, subds. 3 and 4,
which read as follows:

"(3) To supervise the official conduct of all county
officers and officers of all precincts, districts, and other sub-
divisions of the county (except municipal corporations); see
that they faithfully perform their duties; direct prosecutions
for delinquencies; and, when necessary, require them to
renew their official bonds, make reports, and present their
books and accounts for inspection.

"(4) To examine and audit, at least every six months,
the accounts of all officers having the care, management,
collection, or disbursement of moneys belonging to the
county, or appropriated by law or otherwise for its use and
benefit."

Section 511 is divided into 52 subdivisions, in which are
found what is designated by the statute the "general
powers of the board"; that is, the board of county com-
missioners. Among the various duties conferred and imposed
upon the county commissioners of the several counties of this
state are those quoted above. While it is true that appellants'
counsel refer to and rely on various other provisions of our
statute as having some bearing upon the question involved
here, yet all those other provisions are at most incidental,
and are quite as necessary and as effective whether the
judgment of the trial court is sustained or reversed. In our
judgment the right of appellant to invoke the aid of the
courts by writ of mandate to coerce the officers of the school
district and their duty to present their books of account for
inspection and audit to the county commissioners, or to one

whom they may select, must be found in the provisions of the statute we have just quoted.  The general rule of law is that:

"To warrant a court in granting the writ against a public officer, such a state of facts must be presented as to show that the relator has a clear right to the performance of the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing.  And when substantial doubt exists as to the duty or performance of the duties sought to be coerced, or as to the right or power of the officer to perform such duty, the relief will be withheld."  High, Ex. Leg. Rem. (3d Ed.) Sec. 32.

In *State* v. *Morehouse,* 38 Utah 234; 112 Pac. 169, we applied the foregoing rule.  See, also, Wood on *Mandamus,* p. 51.

The question then arises:

What officers are, by subdivision 3, *supra,* placed under the supervision and control of the board of county commissioners?  The language of the statute in that regard is: "All county officers and officers of all precincts, districts, and other subdivisions of the county."  This language must, of necessity, be limited to such officers as are discharging some duty or function relating to the county government, as contradistinguished from school government.  This is made quite clear from what follows in subdivision 4.  In that subdivision it is made the duty of the county commissioners "to examine and audit, at least every six months, the accounts of *all officers having the care, management, collection, or disbursement of moneys belonging to the county, or appropriated by law or otherwise for its use and benefit."* (Italics ours.)

Can it reasonably be contended that either the money or the officers of the high school district, which, as we shall see, is a separate and independent corporate body whose officers have nothing whatever to do with either the governmental or fiscal affairs of the county, and whose funds are devoted to school purposes only, come within the foregoing provisions?  We think not.  The phrase "officers of all * * * districts," in subdivision 3, *supra,* cannot be singled out and construed as counsel contend to apply to all officers, including school district officers.  In order to preserve

the real intent of the Legislature expressed in a particular enactment, we must keep in mind the purpose and the subject-matter thereof. What the Legislature was dealing with in subdivisions 3 and 4 were officers who in some way and in some capacity either directly or indirectly discharge some of the duties or functions pertaining to county funds or county government. We cannot include all officers simply because they may be designated as district officers. To do so would require us to rest a construction of the entire statute upon a phrase or two and ignore all other portions. It is true that counties may be divided into one or more high school districts. This, however, is for convenience and for school purposes merely, and has nothing to do with county officers, county government, or county funds. That such is the case is, we think, made apparent from other provisions of the statute relating to school districts.

In Comp. Laws 1907, section 1,799, it is in part provided:

"Every school district or high school district now or hereafter created shall be and hereby is constituted a public corporation; * * * and in its own proper name as such corporation may sue and be sued, contract and be contracted with," etc.

Suppose any one of the school district officers should embezzle funds or destroy or appropriate to his own use any other property of the corporation, could the county, or the county commissioners in its name and behalf, institute and maintain an action to recover the same? We think no one will seriously so contend. A conclusive answer to such an action is that the county has nothing to do with either the funds or officers of the school corporation or has any interest in their funds. But counsel for appellants insist that the fact that municipal corporations are excluded in subdivision 3 "makes it clear that it was the intention to include all other subdivisions, precincts or districts of the county of whatever kind or nature." It will thus be observed that counsel invoke the canon or rule of construction that the exclusion of one thing includes all others of the same kind or character. This canon or rule of construction is elementary, and under proper conditions may control in

determining the meaning to be given to certain words or phrases of a statute and of an entire statute. In our judgment the rule has no application here for three reasons: (1) Because the supposed exception or exclusion is not such in fact. The officers of the municipal corporation spoken of in the statute could in no possible view be placed under the supervision of the county commissioners. The right of local self-government of such corporations, under our Constitution and statutes, would alone forbid this. (2) Because they in no sense are or could be included in any of the precincts or districts spoken of in the subdivision. And (3) because the limitations in subdivision 4 in and of themselves exclude municipal corporations. A mere rule or canon of construction cannot be permitted to control expressed or clearly implied limitations in a statute.

Again the law (chapter 31, Laws Utah 1911, section 7) provides:

"The board of control of each high school district shall be designated as the board of education. It shall be composed of the county superintendent of schools, and any member of the board of trustees of each common school district within the high school district, who shall be elected by the board of trustees of such common school district."

The board, when elected, must organize by electing one of its members as president, another as vice president, and must also elect "a clerk and a treasurer." The clerk and the treasurer are each required "to give a bond in such sum as shall be fixed by the board of education." The electors of each common school district shall elect a board of trustees of such district. We again ask: What right would the county have to sue on this bond in case of defalcation? The answer is obvious.

It is contended that under Comp. Laws 1907, section 1866, it is made the duty of the county treasurer to—

"receive and hold, as a special school fund, subject to the orders of the county superintendent, all public school moneys from whatever source received; * * * and when the same is apportioned to the school districts, he shall pay it to the district treasurers. * * * He shall, on or before

the 1st day of August in each year, make a report to the
board of county commissioners, who shall audit the same,
and to the state superintendent in such form as he shall
direct, showing:   (1) The amount of moneys on hand at the
commencement of the school year; (2) the amount of moneys
received from the state school fund; (3) the amount received
from the county school tax; (4) the amount received from
other sources; (5) the total expenditures for school pur-
poses; (6) the balance on hand at the end of the school
year.''

Counsel for appellants, in referring to those requirements,
in their brief insist that they show ''a clear intention on the
part of the Legislature to vest the board of county com-
missioners with the power to inspect and audit the books
and accounts of the high school district.''  We confess our
entire inability to arrive at any such conclusion.   For
convenience the county treasurer is charged with the duty of
collecting all moneys derived from taxation in his county,
including school taxes.   After collecting them, he must
account for them.   The Legislature could have required him
to account to the officers of the high school district, or to
the state superintendent of schools, or to the county com-
missioners and to the state superintendent, as was done.
But how that confers any powers on the county commissioners
to inspect and audit the books of account of the high school
district we cannot understand.   In our judgment, when the
county treasurer has paid the money to the school district
treasurers, as required by the statute, he has discharged the
full duty imposed on him by law respecting the school funds.
The county commissioners never have any power over the
school funds, but they, under the statute, have the power
to ascertain whether the county treasurer, as the collector
of taxes and as the fiscal officer of the county, has properly
accounted for the money collected by him.   Suppose a school
district or superintendent should claim an amount of money
in excess of the amount collected by the county treasurer, or
for some other reason it should be urged that the county
treasurer has failed to pay the amount of money apportioned
to such district, would not the county commissioners, as the

governing body of the county, be interested in knowing whether such a claim is well founded or not? The only way they can satisfy themselves with regard to that is by requiring the report, as provided by the statute. There are valid reasons, therefore, other than those suggested by counsel, why the county treasurer should make a report to the county commissioners, as well as to the state superintendent, respecting the school funds collected by him. But it is also urged that it is necessary that some disinterested body or person be authorized to inspect and audit the books of the high school district officers. This may be so, but, if the necessity exists, it affords no reason why we, by an unnatural or forced construction, should declare that the power to inspect and audit is actually vested in the county commissioners. If, in the judgment of the Legislature, it is necessary to authorize some officer or board, other than the board of education, to inspect and audit the books of high school districts, it can easily designate the officer or body who shall exercise such a power and make provision for the expenses incident to such an inspection and audit. We have no such power.

From an inspection and consideration of the several provisions of the statute, we are clearly of the opinion that the county commissioners have not the right to demand, inspect, and audit the books of the respondent high school district. It follows, therefore, that the judgment should be affirmed.

Such is the order. Costs to respondents.

McCARTY, C. J., and STRAUP, J., concur.