Appeal from Third District.

NATIONAL MERCANTILE CO., Limited, v. MATTSON,
Secretary of State.

No. 2642.   Decided September 2, 1914 (143 Pac. 223).

1. CORPORATIONS — CORPORATE POWERS — SCOPE. Corporations have
   and may exercise only such powers as are expressly or by nec-
   essary implication granted, and such as are necessary to effect
   those powers which are granted. (Page 160.)

2. CORPORATIONS — CORPORATE POWERS — CONSTRUCTION OF STATUTE
   AND CHARTER. In determining whether a corporation is exceed-
   ing its charter powers, both the statute and the charter should
   be given a fair and reasonably liberal construction. (Page 160.)

3. BUILDING AND LOAN ASSOCIATIONS — STATUTORY PROVISIONS —
   DEFINITION. A foreign corporation, whose charter gives it very
   broad powers with reference to loaning money to its members
   or others upon any security, and authorizes it "generally to
   engage in any business or transaction which might seem to
   the company directly or indirectly conducive to the interests
   or conveniences of the company, members, or ticket holders,
   or their friends, or any section thereof," is authorized to enter.
   into a building and loan contract within the meaning of Laws
   1911, c. 129, section 7, providing that a foreign building and loan
   association shall include all foreign corporations doing a savings
   and loan or investment business. (Page 160.)

4. BUILDING AND LOAN ASSOCIATIONS—FOREIGN ASSOCIATIONS—CER-
   TIFICATE OF AUTHORITY—MANDAMUS TO COMPEL GRANTING. In
   any event the right of the company to a certificate to do busi-
   ness in the state, without making the deposit required of for-
   eign building and loan associations by Laws 1911, c. 129, section
   1, or filing the statement required by Comp. Laws 1907, section
   397, is not so free from doubt that the court will issue man-
   damus to compel the Secretary of State to grant such certifi-
   cate, since the right of the applicant and the duty of the officer
   are not reasonably clear.[1]  (Page 162.)

5. CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS—FOR-
   EIGN CORPORATIONS—POWER TO RESTRICT. Laws 1911, c. 129, sec-
   tion 1, requiring a deposit to be made by a foreign building and
   loan association before it shall be permitted to do business
   within the state, does not violate Const. U. S. Amend. 14, Sec.
   1, providing that no state shall deny to any person within its

[1] Carbon County v. Carbon County High School Dist., 45 Utah
—; 143 Pac. 220; State v. Morehouse, 38 Utah 234; 112 Pac. 169.

jurisdiction the equal protection of the laws, since the corpo-
ration is not within the state's jurisdiction until it is author-
ized to do business there. (Page 162.)

6. CONSTITUTIONAL LAW—PRIVILEGES OF CITIZENS—FOREIGN CORPO-
RATIONS—POWER TO RESTRICT—"CITIZEN." Nor does that act vio-
late Const. U. S., article 4, section 2, granting to the citizens of
each state the privileges and immunities of citizens of the
several states, since corporations are not citizens, within the
meaning of that article, and any recognition of their existence,
outside the sovereignty which created them, is a matter of
comity, not of right. (Page 163.)

Appeal from District Court, Third District; *Hon. Geo. G.
Armstrong,* Judge.

*Mandamus* by the National Mercantile Company, Limited,
against David Mattson, Secretary of the State of Utah.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*D. O. Willey* for appellant.

*A. R. Barnes,* Attorney General, *E. V. Higgins* and *G. A.
Iverson* for respondent

FRICK, J.

The National Mercantile Company, Limited, a corporation,
organized under the laws of the province of British Colum-
bia, with its principal office and place of business in the
City of Vancouver, in the province aforesaid, hereinafter
styled appellant, made application to the District Court of
Salt Lake County for a writ of mandate requiring David
Mattson, Secretary of the State of Utah, hereinafter called
respondent, to issue to appellant a certificate in the usual
form, authorizing it to carry on business within the State
of Utah. Appellant, after alleging the foregoing facts
respecting its organization and place of business, in sub-
stance alleged that it had made application to the respond-
ent, as Secretary of the State of Utah, for a certificate in
the usual form authorizing it to do business in this state;

that it had complied with the provisions of our Constitution in tendering to respondent a proper resolution duly passed by its governing body, whereby it adopted the provisions of the Constitution of this state relating to foreign corporations; that it had also tendered to him and offered to file a copy of its articles of association and by-laws, in which articles of association the objects and purposes for which it was created, and the business it is authorized to conduct and carry on, are duly set forth, and that respondent had refused and still refuses to issue to appellant a certificate authorizing it to do business in this state.

The objects and purposes which appellant is authorized to carry on are contained in 24 separate and distinct subdivisions of its charter lettered from "a" to "x," inclusive. In subdivision "a," after setting forth a number of specific things, this general clause is added:

"And generally to engage in any business or transaction which may seem to the company, directly or indirectly, conducive to the interests or conveniences of the company's members or ticket holders, or their friends, or any section thereof."

Subdivisions "t," "u," "v," "w," and "x" are as follows:

"(t) To make and enter into any form of contract with members of the company and others providing for payments to be made to the company and from time to time or for certain specified times by such member, members or persons. and in such amounts as may be agreed upon and in consideration therefor, to give to such member, members or persons, certain rights to loan, or other rights and privileges, with such provisions as to repayments of loans, interest, security, rights of redemption, repurchase and cancellation, and such other terms, conditions and provisions as may be agreed upon.

"(u) To carry on a general loan, mortgage and investment business with the members of the company and others in all its branches.

"(v) To advance or lend the capital or other moneys of the company for the time being on the security of freehold,

leaseholds, bills of exchange, promissory notes, bonds, agreements, goods, chattels or other property, real and personal, and in particular under the terms of the loan and investment contracts of the company.

"(w) Out of the moneys derived from the sale of investment contract or other moneys, to create special reserve or loan funds for the purpose of making loans and settling with contract holders, or for any other purpose of the company.

"(x) To sell or dispose of loan or investment contracts of various classes and descriptions, providing for sharing of profits or otherwise."

The shares of the capital stock of the company, or "the share capital of the company," as it is stated in the articles presented for filing, is $10,000, divided into 100 shares of $100 each. Of the foregoing shares there were subscribed as follows: By George Edward Stillings, promoter, 25 shares; by Roy Arthur Campbell, bookkeeper, 1 share; by John R. Vernon, 1 share; by Chester Frank Campbell, 1 share; by Edith Gertrude Stillings, 1 share. It is provided in the by-laws that every member is entitled to a certificate for each share registered in his name, and each share is entitled to one vote.

The respondent, through the Attorney General of the State, appeared and filed a general demurrer to the application. Upon a hearing the District Court sustained the demurrer and entered judgment dismissing the application, from which this appeal is prosecuted.

The respondent contends that, under the certified copy of the charter tendered for filing, the appellant is not entitled to a certificate authorizing it to do business in this state, unless and until it complies with section 1 of chapter 129, Laws Utah 1911, 253, which provides:

"No building and loan association heretofore or hereafter organized under the laws of any other state, or territory or foreign country, for the purpose of engaging in the building and loan business shall be allowed to do business or sell their stock or certificates in the State of Utah without first having deposited with the State Treasurer or responsible trust companies within or without the state designated by him,

the sum of fifty thousand dollars ($50,000), either in cash or bonds of the United States or bonds of any county or municipal corporation of the State of Utah, or in first mortgage upon real estate located within this state, as a guarantee fund for the protection and indemnity of the residents of the State of Utah, with whom such association shall do business; the fund so deposited to be paid by the custodian thereof to the residents of Utah when proof of claim of final judgment has been filed with the custodian of such fund against such foreign association.''

It is further contended by respondent that, before appellant is entitled to the certificate, it must also comply with the provisions of Comp. Laws 1907, section 397, by filing the statement therein required. That section reads as follows:

''It shall be unlawful for any building and loan association not organized under the laws of this state, to transact business herein unless the company shall have obtained a certificate of authority from the Secretary of State, and shall have filed with the Secretary of State a certified copy of its articles of incorporation or charter and by-laws; together with a statement subscribed and sworn to by the manager or by an officer of the company, showing: (1) The amount of authorized capital, and the par value of each share; (2) the number of shares sold during the year; (3) the number of shares cancelled and withdrawn during the preceding year; (4) a statement of receipts and disbursements during the preceding year; (5) salaries paid each of its officers; (6) a statement of its assets and liabilities at the end of the year, and the nature thereof in general terms; (7) any other fact which the Secretary of State may require. Upon receipt of such statement, the Secretary of State, if he believes that the association is properly managed, that its financial condition is satisfactory, and that its business is conducted upon a safe and reliable plan, shall issue a certificate of authority to such corporation.''

It is further provided in chapter 129, *supra,* section 7, as follows:

''The name 'foreign building and loan associations,' as used in this act, shall include all foreign corporations, soci-

eties or organizations or associations doing a saving and loan or investment business on the building society plan, whether mutual or otherwise, and whether issuing certificates of stock which mature at a fixed time in advance or not."

Counsel for appellant vigorously contends, however, that the provisions set forth above do not apply to appellant, for the reason that in its charter it is not authorized to transact what is usually denominated a building and loan business. In support of his contention, he has cited some cases in which the courts have undertaken to define what constitutes a building and loan business. It is, however, not necessary for us to refer to the cases, since our statute (chapter 129, section 7, *supra*) provides us with a definition, and hence the only question is whether appellant in its charter is authorized to transact the business there defined. Whether a corporation is authorized to transact and carry on a particular business must be determined from an inspection of the statutes under which it is created and the powers conferred upon it by its charter.

Corporations have and may exercise only such powers as are expressly or by necessary implication granted, and such as are necessary to effectuate those powers which are granted as aforesaid. 10 Cyc. 1096; *Gitzhoffen* v. *Hospital Ass'n*, 32 Utah 46; 88 Pac. 691; 8 L. R. A. (N. S.) 161.

No doubt (in determining whether a corporation is transcending its charter powers or not) both the statute and the charter should be given a fair and reasonably liberal construction. We think the respondent is entitled to place a liberal construction upon the charter in question in determining whether the business that may be transacted under it comes within any of the provisions of our statute.

Applying such a construction to the charter proposed to be filed, the question to be answered is: Is the respondent justified in refusing appellant a certificate of authority to carry on the business specified therein within this state, unless and until it complies with the provisions of the statute we have hereinbefore set forth? When

the various and sweeping powers that are contained in the charter in question were called to the attention of appellant's counsel at the hearing, he frankly conceded that the charter apparently permitted appellant to enter upon and carry on "about everything," except the conducting of a building and loan business. The writer, speaking for himself, desires to state that during the last thirty-five years he has had occasion to examine into and prepare many corporate charters, but in all of his experience and examinations thereof he has never seen a charter so comprehensive and sweeping as the one in question. Nor can he conceive how much more could have been said if it had been intended to specially authorize a certain kind of building and loan business, except, perhaps, to enter into the details which more properly belong to the by-laws. While the kind or character of contracts that it is proposed to enter into between appellant and its members or shareholders is not set forth or indicated, yet it seems to us that, by giving the charter only a fair construction, most any kind of a contract or business arrangement, including a general building and loan business, could be carried on, if the appellant is once admitted to do business within the state without being subject to being interfered with on the ground that its acts are *ultra vires* its charter. A somewhat similar situation was presented to the Washington Supreme Court in *State* v. *Co-Operative Home Builders,* 47 Wash. 235; 91 Pac. 953. In that case the contract that the corporation proposed to enter into with its members and stockholders is set out at length in the opinion, and the Supreme Court of Washington held that the transaction set forth in the contract practically amounted to what is generally denominated a building and loan business. We have carefully examined the contract and have considered it in the light of what appellant would be authorized to do under its charter, and we can see no reason whatever why appellant would not be authorized to enter into a contract with its members or stockholders, or others, precisely like the one which the Supreme Court of Washington held constituted a building and loan contract in the case referred to.

162        SUPREME COURT OF UTAH.        |Sept.

National Mer. Co., Ltd., v. Mattson, Secretary of State, 45 Utah 155.

At all events, the respondent, in our judgment, is authorized to place a reasonably liberal construction upon appellants' charter powers, and, so long as there is a substantial doubt respecting the correctness of his construction, we cannot coerce him by mandamus to issue a certificate of authority to appellant. Respondent represents a part of the executive department, which is a co-ordinate and independent branch of the state government, and, in view of the fact, we should not interfere with his judgment, unless it is made to appear to us, with at least reasonable clearness, that appellant is entitled to the certificate applied for. We have repeatedly held that a public officer will not be coerced by writ of mandate to do an official act, when the right of the applicant and the duty of the officer are not reasonably clear. See *Carbon County* v. *Carbon County High School Dist.*, 45 Utah 147; 143 Pac. 220 (decided this term); *State* v. *Morehouse*, 38 Utah 234; 112 Pac. 169, and authorities there cited. See, also, Mechem on Public Officers, sections 937, 938. In view that respondent, in part at least, represents an independent and co-ordinate branch of the state government, the doctrine announced in the foregoing cases apply with especial force. For the reason, therefore, that, under a reasonably liberal construction of its charter powers, appellant, if admitted to this state, could carry on a building and loan business, we are not authorized to coerce respondent to issue a certificate of authority to carry on its business within this state until it complies with the provisions of our statute.

It is, however, strenuously contended by appellant's counsel that chapter 129, *supra,* is unconstitutional and void because it contravenes article 4, section 2, of the federal Constitution, which provides:

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

And further that said chapter also offends against that provision of the fourteenth amendment to the federal Constitution, which, among other things, provides:

"No state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

So long as appellant is not permitted to come within the state, it, of course, is not within the jurisdiction thereof, and hence cannot invoke that constitutional provision.

It has, however, often been held by the courts that the provisions found in article 4, section 2, aforesaid, has no application whatever to foreign corporations. Among the numerous cases upon the question, we refer to **6** the following: *Blake* v. *McClung,* 172 U. S. 239; 19 Sup. Ct. 165; 43 L. Ed. 432; *Paul* v. *Virginia,* 8 Wall. 168; 19 L. Ed. 357; *Lafayette Ins. Co.* v. *French,* 18 How. 404; 15 L. Ed. 451; *Insurance Co.* v. *Morse,* 20 Wall. 445; 22 L. Ed. 365; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; 24 L. Ed. 148. See, also, 2 Cook on Corporations (6th Ed.) section 696; Thompson, Corporations (2d Ed.) section 6640. The law upon the subject is very clearly stated by Mr. Thompson, in the section aforesaid, as follows:

"On the question of the right of a state to exclude or regulate foreign corporations, it is to be borne in mind that foreign corporations have no legal existence beyond the bounds of the state or sovereignty by which they are created, and can exercise none of the functions and privileges conferred by their charters in any other state or country, except by its comity and consent. 'No state can by merely creating a corporation, or in any other mode, project its authority into other states, and across the continent.' It is accordingly well settled by the authorities that this comity may be modified or withdrawn, and that a state may exclude foreign corporations altogether from doing business within its limits, or it may impose any conditions or restrictions which it may deem fit to impose, provided these conditions do not violate the fundamental law of the state or the United States. The admission of foreign corporations to do business in another state is absolutely within the discretion of the Legislature, and is granted solely as a matter of grace or comity, and not of right. 'Every independent community,' says Judge Story, 'will, and ought to, judge for itself how far that comity ought to extend. The reasonable limitation is, that it shall not suffer prejudice by its comity.' This power of the state is as extensive as its power over domestic corporations, and its motives in the enactment of these regulatory statutes cannot be inquired into, however harshly they may operate. The question where the state imposes conditions upon foreign corporations is always one of legislative intent and not of legislative power. Territorial legislatures have like powers in the matter of the exclusion or regulation of foreign corporations. The right of the state to exclude or regulate includes foreign building associations and eleemosynary corporations."

The cases we have referred to, as well as others collated by Mr. Thompson, support the text just quoted. It has also frequently been held that to require a foreign building and loan association or company to make a deposit as required by chapter 129, *supra*, is not contrary to the federal Constitution. *Blake* v. *McClung, supra; Maynard* v. *Granite St., etc., Ass'n*, 92 Fed. 435-441; 34 C. C. A. 438; *People* v. *Granite St., etc., Ass'n*, 161 N Y. 492; 55 N. E. 1053; *Irwin* v. *Granite St., etc., Ass'n*, 56 N. J. Eq. 244; 38 Atl. 680; *Floyd* v. *National Loan & Inv. Co.*, 49 W. Va. 327; 38 S. E. 653; 54 L. R. A. 536; 87 Am. St. Rep. 805; *Clark* v. *Olson*, 9 N. D. 364; 83 N. W. 519. In *Blake* v. *McClung, supra*, Mr. Justice Harlan, in distinguishing that case from one in which is involved the making of a deposit by a foreign corporation, uses the following language:

"It may be appropriate to observe that the objections to the statute of Tennessee do not necessarily embrace enactments that are found in some of the statutes requiring foreign insurance corporations, as a condition of their coming into the state for purposes of business, to deposit with the State Treasurer funds sufficient to secure policy holders in its midst. Legislation of that character does not present any question of discrimination against citizens forbidden by the Constitution. Insurance funds, set apart in advance for the benefit of home policy holders of a foreign insurance company doing business in the state, are a trust fund of a specific kind to be administered for the exclusive benefit of certain persons. Policy holders in other states know that those particular funds are segregated from the mass of property owned by the company, and that they cannot look to them to the prejudice of those for whose benefit they were deposited. The present case is not one of that kind."

But in no event can a foreign corporation complain of any such provision, since it is not included within the term "citizen." Quoting again from the opinion of Mr. Justice Harlan, in the *Blake* case, where, in referring to the rights of citizens of the different states, he says:

"But it is equally well settled, and we now hold, that a corporation is not a citizen, within the meaning of the constitutional provision that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.' (Citing cases.) The Virginia corporation, therefore, cannot invoke that provision for

protection against the decree of the state court denying its right to participate upon terms of equality with Tennessee creditors in the distribution of the assets of the British corporation in the hands of the Tennessee court."

In *Maynard* v. *Granite St., etc., Ass'n, supra,* Mr. Justice Taft, after referring to the case of *Blake* v. *McClung, supra,* in upholding the right of a state to require from a foreign corporation a deposit of securities as a condition of doing business within the state, says:

> "So, in this case, had the Legislature of Michigan provided that, as a condition of the defendant association's doing business in the State of Michigan, it should deposit a fund with the State Treasurer or other state officer to be used for the security of resident stockholders or creditors of the State of Michigan, such a provision would not have been in violation of the fourth article of the federal Constitution. Such, indeed, was the character of the legislation adjudged to be valid in the case of *Lewis* v. *Association,* 98 Wis. 203; 73 N. W. 793; 39 L. R. A. 559, where a foreign building association was required by the law of Wisconsin to deposit $100,000 of its security with the State Treasurer in trust for the redemption of the obligation of the association to persons residing in Wisconsin; those obligations including the payment of shareholders in the building association."

The precise question discussed by Mr. Justice Taft is discussed and decided contrary to appellant's contention in *People* v. *Granite St., etc., Ass'n, supra; Irwin* v. *Granite St., etc., Ass'n, supra; Lewis* v. *American S. & L. Ass'n,* 98 Wis. 203; 73 N. W. 793; 39 L. R. A. 559; and in *Clark* v. *Olson,* 9 N. D. 364; 83 N. W. 519. All of those cases were decided after *Blake* v. *McClung, supra,* and follow the doctrine laid down in that case. But counsel for appellant insists that what is said in *Blake* v. *McClung,* by Mr. Justice Harlan, is *"obiter dicta."* Counsel has a somewhat peculiar view of what constitutes *obiter dicta.* To distinguish between a principle which controls in one case from one which is involved and controls another case is not *obiter dicta,* and that is precisely what Mr. Justice Harlan did in *Blake* v. *McClung.* The same might be said of what Mr. Justice Taft said in the case we have quoted from above. The decisions in the New York and New Jersey cases to which we have referred, all of

166 SUPREME COURT OF UTAH. [Sept.

National Mer. Co., Ltd., v. Mattson, Secretary of State, 45 Utah 155.

which were decided after *Blake* v. *McClung* was decided, are not *obiter dicta*. Counsel also insists that, if the deposit in the cases referred to had been resisted when it was demanded, the result in those cases would have been different. The contention is based upon the fact that in some of those cases are found expressions that, in view that the corporations had made the deposits before the receivers were appointed to wind up the corporate affairs, therefore the receivers were estopped from questioning the validity of the deposits so made. From those expressions it is inferred that the deposits could have been successfully resisted before they were made, but not afterwards. If counsel's contentions are sound that chapter 129 is unconstitutional, we .cannot see how the state or any one else could claim any rights under it. An enactment which transcends either the state or federal Constitution is, as a matter of course, not enforceable when assailed in any proper proceeding. The question of estoppel could therefore not arise. Counsel's theory is, however, completely exploded by what is said in *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; 24 L. Ed. 148.

Finally it is contended that the only case which is "on all fours" with the case at bar, respecting the constitutional question raised, is the case of *State* v. *Board of Ins. Com'rs*, 37 Fla. 564; 20 South. 772; 33 L. R. A. 288. With all due respect to counsel, we cannot yield assent to this contention. The principle which is passed on and which controls in that case is in no sense involved in the case at bar. The doctrine laid down in that case is fully discussed and applied by the Supreme Court of the United States in *American Smelting Co.* v. *Colorado*, 204 U. S. 103; 27 Sup. Ct. 198; 51 L. Ed. 393; 9 Ann. Cas. 978. All that is in effect decided in the Florida case is that, when a foreign corporation is permitted to come within the state to transact its business there, such state may not thereafter impose more onerous conditions upon its right to transact business within the state than it imposes on domestic corporations, and a law which imposes such conditions is void. The question of the state's right to impose conditions upon the right to come within the state to transact business by a foreign corporation, while recog-

nized by the court, was not involved nor decided in that case. Assuming, however, that it was involved and decided as counsel contends, yet it would not be binding upon us, for the reason we have pointed out that the Supreme Court of the United States, the court of last resort upon the question, has held directly to the contrary. What we decide, therefore, is not that a state may, at any time after it has permitted a foreign corporation to come within its borders to transact its business, impose conditions other than those which it imposes upon domestic corporations, but what we hold is that, where interstate commerce is not involved, a state may impose any conditions that are not repugnant to the federal or state Constitutions upon the right of a foreign corporation to come within the state to transact business therein. The only question for the state to determine is one of policy, and of course the courts may not interfere, although in their judgment the policy pursued by a state may be both onerous and unwise. After a state permits a foreign corporation to come within its borders to transact business, the courts will protect the corporation upon the principles of comity. The state may, however, disregard and ignore all comity and impose any conditions upon the foreign corporation before it is admitted to the state within limits hereinbefore stated.

For the reasons stated, the judgment of the district court is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.