TOWLER et al. v. WARENSKI et al.

No. 3729.   Decided December 12, 1921.   (202 Pac. 374.)

1.  MUNICIPAL CORPORATIONS—LEGISLATURE AUTHORIZED TO INCORPOR-
    ATE AND CLASSIFY.  Const. art. II, § 5, expressly confers on the
    Legislature the power by general law to incorporate, organize,
    and classify cities and towns in proportion to their population.

2.  MUNICIPAL CORPORATIONS—OFFICERS ELECTED AS FOR SECOND
    CLASS CITY NOTWITHSTANDING INCREASE IN REQUIRED POPULA-
    TION.  As Laws 1921, c. 8, § 1, amending Comp. Laws 1917,
    §§ 525, 526, classifying cities and providing for the methods of
    procedure by which a city of an inferior class may be declared
    to be of superior class, does not provide a method for reducing
    cities from a superior to an inferior class, a city functioning as
    a city of the second class prior to the amendment should con-
    tinue to elect officers as such, though not having the requisite
    population for such city under the amendment.[1]

3.  MANDAMUS—NOT PROPER REMEDY WHERE DEFENDANTS NOT
    SHOWN TO HAVE REFUSED TO OBEY LAW OR PERFORM DUTY.  To
    authorize a writ of mandamus defendants must be shown to
    have refused to obey some law or failed to perform some duty
    under the law, and the duty sought to be enforced must be plain
    and clear, and not open to question or doubt.[2]

Original mandamus proceeding by Richard C. Towler and
others against W. J. Warenski and others to compel the per-
formance of certain duties relating to election of officers at
the ensuing election.

PEREMPTORY WRIT DENIED.

D. W. Moffat, of Murray, for plaintiffs.

John E. Pixton, of Murray, and W. W. Ray, of Salt Lake
City, for defendants.

[1] People v. Page, 6 Utah, 353, 23 Pac. 761.
[2] State v. Moorehouse, 38 Utah, 234, 112 Pac. 169;  Hamblin v.
State Board of Land Com'rs, 55 Utah, 402, 187 Pac. 178.

*THURMAN, J.*

The complaint in this action was filed October 25, 1921, praying for a writ of mandate to compel defendants, as city recorder, mayor, and commissioners of Murray City, in Salt Lake county, Utah, to perform certain alleged duties relating to the election of officers for said city at the ensuing November election.

It is alleged in the complaint that defendants are the recorder, mayor, and commissioners of said city; that since 1905 the government and officers of said city have been as provided by law for cities of the second class; that the United States census for 1920 shows that said city has a population of 4,584. The complaint then quotes certain sections of the statute enacted by the Legislature of 1921, providing for the classification of cities, in which it appears that cities of the second class should have a population of 7,000, with the proviso that any city of the second class theretofore existing shall continue to be a city of the second class with all the rights and powers pertaining thereto as provided by law. It is then alleged by plaintiffs that said proviso is in conflict with the state Constitution, (article 11, § 5), which provides that cities must be classified by general laws in proportion to population, which laws may be altered, amended or repealed. Plaintiffs further allege that defendants are calling an election to be held November 8, 1921, for the purpose of electing a mayor, one commissioner, and a city auditor for said city, as officers of a second class city, notwithstanding said city is a city of the third class, and the officers to be elected for a city of such class are a mayor for a two-year term, one city councilman for a four-year term, three city councilmen for a two-year term, and a treasurer for a two-year term. It is further alleged in the complaint that, unless otherwise directed by mandate of this court, defendants will hold said election and elect officers for a second class city, contrary to law and the duty of said defendants as officers of said city. Plaintiffs further allege that they and other persons have tendered to said recorder, defendant herein,

Mandamus.   Writ denied

their certificates of nomination as candidates for the offices to.be filed for a city of the third class, but that said recorder, under instructions of the other defendants, has failed, neglected, and refused to file said certicates of nomination as required by law, and that plaintiffs have no plain, speedy, and adequate remedy at law for the grievances complained of.

An alternative writ was issued and made returnable October 29, 1921, at which time defendants appeared and interposed a general demurrer to the complaint. All the parties being present in court the cause was argued and submitted. On account of the close proximity of the election, the court proceeded at once to determine the questions involved and arrived at the conclusion that defendants' demurrer to the complaint should be sustained and the peremptory writ denied. An order was made accordingly and entered upon the minutes of the court, of which the parties litigant had immediate notice.

It only remains to assign the reason for the conclusion at which the court arrived.

As appears from the complaint, Murray City was organized as a city of the second class in 1905, under the law as it existed at that time, and said city has ever since continued to exist and do business as a city of the second class. The statute in pursuance of which it was organized is found in Comp. Laws Utah, 1917, §§ 525 and 526, which read as follows:

"525. Municipal corporations in this state now existing, and those hereafter organized, are hereby divided into three classes. Those cities having 50,000 or.more inhabitants shall be known as cities of the first class; those cities having more than 7,000 and less than 50,000 inhabitants shall be known as cities of the second class; and all other cities shall be known as cities of the third class."

"526. Whenever any city of the second class shall have attained the population of 50,000 or more, or any city of the third class, or town shall have attained the population of 5,000 or more, and such fact shall have been duly ascertained and certified to the Governor by the mayor or the president of the board of trustees, he shall declare, by public proclamation, such city or town to be of the first or second class, as the case may be, and such city or town, thus changed, shall be governed by the provisions of this title applicable to cities of such class."

The Legislature in 1921 (Sess. Laws 1921, c. 8) amended said sections by substituting the following:

"525. Municipal corporations in this state now existing, and those hereafter organized, are hereby divided into three classes. Those cities having 50,000 or more inhabitants shall be known as cities of the first class; those cities having more than 7,000 and less than 50,000 inhabitants shall be known as cities of the second class; and all other cities shall be known as cities of the third class.

"526. Whenever any city of the second class shall have attained the population of 50,000 or more, or any city of the third class or town, shall have attained the population of 7,000 or more, as ascertained and determined by a national or state census it shall be the duty of the mayor or president of the board of trustees to certify such fact to the Governor. Upon receipt of such certificate the Governor shall declare by public proclamation, such city or town to be of the first or second class, as the case may be, and such city or town, thus changed, shall be governed by the provision of this title applicable to cities of the class to which such city or town has been changed; provided, that any city of the second class heretofore existing shall remain a city of the second class with all the powers and rights thereof both as to school district and municipal government as provided by law for cities of the second class."

The amended sections constitute the statute relied on by plaintiffs and quoted at length in their complaint.

Comparison between the former law in pursuance of which the city was organized and the same law as amended in 1921 will disclose the difference clearly and distinctly without the necessity of construction or interpretation. Plaintiff's contention is that under the law as amended in 1921 a city, to be of the second class, should have a population of at least 7,000, and that such applies to all cities of the second class whether existing prior to the amendment or organized thereafter. They base their contention upon the proposition that laws relating to the classification of cities must be general and uniform in their operation as to each class, and that a statute which attempts to make a distinction between cities organized as second class cities before the statute is enacted and those that may be organized thereafter in respect to population is repugnant to the provisions of article 11, § 5, of the state Constitution, which reads as follows:

"Corporations for municipal purposes should not be created by

special laws; the Legislature, by general laws, shall provide for the incorporation, organization and classification of cities and towns in proportion to population; which laws may be altered, amended or repealed."

Counsel for plaintiff call our attention to the following authorities which they insist are more or less in point. *People* v. *Page,* 6 Utah, 353, 23 Pac. 761; *Johnson* v. *Gunn* (Cal. App.) 84 Pac. 370; Dillon, Mun. Corp. (5th Ed.) p. 287; *Chinn* v. *Gunn,* 148 Cal. 755, 84 Pac. 669.

As against plaintiffs' contention defendants interpose many defenses: (1) That the defendants have violated no duty and have only done what the law requires them to do; (2) that mandamus is not a proper remedy; (3) that the unconstitutionality of a law cannot ordinarily be invoked as a basis for relief in mandamus proceedings; (4) that the proviso in question is not unconstitutional, but, if it is so, the entire law is unconstitutional, as the enactment of one part is conditioned upon the enactment of the other. Defendants cite authorities tending to support one or more of the defenses relied on, but in view of the conclusions reached by the court and the basis upon which it has concluded to rest its decision it is unnecessary to consider in detail the authorities cited by either of the parties to the litigation.

The constitutional provision heretofore quoted and upon which plaintiffs implicitly rely expressly confers upon the Legislature the power by general law to incorporate, organize, and classify cities and towns in proportion to their population, and also provides that such laws may be altered, amended, or repealed; in other words, the power in respect to these questions is entirely legislative and in no sense judicial or ministerial.

Murray City was classified in 1905, under the law then existing, as a city of the second class, and its right to be so classified at that time is not challenged by any question presented in this proceeding. It is therefore conclusively presumed for the purposes of this case that it had the requisite population, that its population had been duly ascertained and certified to by the proper officers of the city and proclamation

issued by the Governor declaring it to be a city of the second class. It has since performed the functions of a second class city in pursuance of the laws enacted for the government of cities of that class. The Legislature, while scrupulously providing for the method of procedure by which a city of an inferior class may be declared to be a city of a superior class and clothed with authority to act as such, has utterly failed to provide a. method by which a city of a superior class may be reduced to a city of an inferior class. It is not enough to say that the question is automatically determined by ascertaining the population of a city. In view of the statutes heretofore quoted, it cannot be seriously contended that a second or third class city could automatically become a city of a higher class and be endowed with the powers and functions pertaining thereto merely because it has the requisite number of inhabitants. There must be a certification of that fact to the Governor and a proclamation issued by him assigning the city to its proper class. These formalities are just as necessary to effectually endow a city with the right to become a city of a higher class and exercise the powers and functions thereof as it is to ascertain that such city has the requisite number of inhabitants. As before stated, it is purely a matter of legislation, and the formalities prescribed by the Legislature must be substantially complied with.

It may be contended that this conclusion is in conflict with the doctrine enunciated in *People* v. *Page, supra,* relied on by plaintiffs. In that case the United States census of 1880 showed that Salt Lake City had already attained the population requisite to constitute it a city of the first class. It was not the case of a city of the second class, by an increase of its population, becoming entitled to be declared a city of the first class. It was already a city of the first class when the law of 1888, authorizing a classification of cities, was enacted, and consequently did not come within the letter of the law requiring certification by its officers and proclamation by the Governor. Notwithstanding this distinction, however, this court has grave doubts as to the soundness of the doctrine

enunciated in the *Page Case* and is of the opinion that the case was within the spirit of the law which required certification by its officers and proclamation by the Governor just the same as in the case of cities passing from a lower to a higher class.

There being no statute whatever, as heretofore stated, providing a method by which a city of a higher class may be reduced to a city of a lower class and endowed with power to function as such, instead of it being the plain duty of defendants in the instant case to assume that officers of a third class city should be elected for Murray City, in our opinion it would have been presumptuous on their part to have attempted to provide for the election of such officers.

This case as a proceeding in mandamus is somewhat anomalous in that it is nowhere shown what law the defendants have refused to obey or what duty under the law they have failed to perform. In such a case it must be conceded that mandamus is not a proper remedy. In a proceeding by mandamus the duty sought to be enforced must **3** be plain and clear, and not open to serious question or doubt. 26 Cyc. 151-153 *et seq.; State* v. *Moorehouse,* 38 Utah, 234, 112 Pac. 169; *Hamblin* v. *State Board of Land Com'rs,* 55 Utah, 402, 187 Pac. 178. As to this proposition the authorities appear to be practically unanimous.

We are not required in the instant case, nor do the exigencies of the case demand that we undertake, to indicate or suggest whether or not some other remedy might be pursued whereby Murray City may be declared to be a city of the third class, as indicated by its population, and authorized to proceed under laws applicable thereto. We suggest, however, without assuming to decide the question in advance, that any attempt to accomplish such result without further legislation prescribing some method of orderly procedure, indicating when and how a change from one class to the other may be affected, might lead to inextricable confusion resulting in a situation not contemplated by the framers of the Constitution when they adopted the provision requiring classification to be in proportion to population.

·We have not deemed it necessary in this opinion to determine the constitutional question presented.˄

The peremptory writ is denied at plaintiffs' cost.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.